[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCT 3, 2008
THOMAS K. KAHN
CLERK

_____

No. 08-10335
Non-Argument Calendar

_____

Agency Nos. A95-551-636
A95-551-637

GILBERTO ANTONIO LONDONO,
AURA MARINA HERNANDEZ,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(October 3, 2008)

Before BIRCH, DUBINA and PRYOR, Circuit Judges.

PER CURIAM:

Gilberto Antonio Londono, and his wife, Aura Marina Hernandez, natives and citizens of Colombia, petition this Court for review of the decision of the Board of Immigration Appeals that denied Londono's application for asylum and withholding of removal under the Immigration and Nationality Act. The Board found that Londono failed to prove that he suffered "past prosecution" or has a well-founded fear of future persecution. We dismiss in part and deny in part Londono's petition.

## I. BACKGROUND

Londono entered the United States on February 4, 2000 as a nonimmigrant visitor. On September 30, 2003, the Immigration and Naturalization Service issued a notice to appear and charged Londono for staying in the country past the authorized period. INA § 237(a)(1)(B); 8 U.S.C. § 1227(a)(1)(B). Londono conceded removability and filed an application for asylum and withholding of removal under the Immigration and Nationality Act and the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment.

At his removal hearing, Londono testified about the incidents that led him to leave Colombia. Londono was an independent contractor in Medellin and performed several civic activities to benefit the youth and the disadvantaged in the

2

community. Londono was also a member of the Agamzada Liberal Party and campaigned actively for Antonio Serpas in the 1998 presidential election.

In November 1999, Londono received a telephone call from a person who identified himself as a member of the Revolutionary Armed Forces of Colombia ("FARC"). The person insulted Londono and stated, "you are getting involved in matters you should not be getting involved in." Londono testified at the hearing that the caller did not identify the "matters" in which Londono was no longer to participate.

A month later, Londono awoke to a sound he attributed to firecrackers. The next day, Londono observed that bullets had riddled the front of his house. Londono received a second telephone call and the caller, who identified himself as a member of FARC, stated that Londono knew that he could not "play with FARC," and cautioned that he or a member of his family would receive the "next one." Londono reported the incident to the police. Prosecutors told Londono that they could not provide security and instructed Londono to hide.

Londono quit work and moved a mile away to the home of his sister-in-law, but Londono continued to receive calls at the new residence from people who identified themselves as members of FARC. Londono then moved to the home of another relative. At the urging of family, Londono entered New Jersey on a tourist visa in February 2000. Londono's visa expired on August 3, 2000.

3

Two months after Londono entered the United States, Londono's wife, Hernandez, received calls from the FARC. Hernandez and her daughters feared for their lives. The women joined Londono in New Jersey in September 2000. The family later relocated to Massachusetts.

In November 2000, Londono contacted attorney Linda Cristello regarding his immigration status. Cristello gave Londono a receipt which stated that their meeting was a "consultation" and did "not create a contractual relationship for legal representation." Londono testified that Cristello told him that he did not occupy a position of sufficient authority or leadership in Colombia to obtain asylum in the United States.

Later, Londono and his family moved to Miami. Londono consulted with an attorney who advised him to file an application for asylum. A friend prepared an application for Londono that he filed in May 2002. Londono sought a waiver of the one-year deadline and a grant of asylum based on his political opinion.

Londono testified that he did not seek a second opinion after he spoke with Cristello because he was "disarmed" and feared the family would be deported. Londono acknowledged that he and his family were threatened, but not harmed. Londono also acknowledged that the callers never explained which of his activities prompted them to threaten him. At the conclusion of the hearing, Londono withdrew his request for relief under the Convention.

4

The immigration judge denied Londono's application. The judge found that Londono's application was untimely and Londono did not establish extraordinary circumstances to except him from the deadline. The judge credited Londono's testimony about the threats and damage to his home in Colombia, but found that the acts were not attributed to Londono's political activities and were not persecution. The judge concluded that Londono did not establish a well-founded fear of persecution. The judge found that civil unrest had subsided in Colombia and, because members of Londono's family had remained in Colombia without incident, there was no evidence that Londono faced persecution if he returned home.

Londono appealed and the Board dismissed the appeal. The Board found that Londono did not challenge the conclusion of the immigration judge that Londono did not establish changed or extraordinary circumstances that would except him from the one-year deadline to seek asylum, and the Board affirmed that conclusion. The Board "agree[d]" that Londono did not establish that he was targeted "on account of [his] political opinion or another ground protected by the Act" and affirmed the decision to deport Londono.

## II. STANDARDS OF REVIEW

We review <u>de novo</u> an issue of subject matter jurisdiction.

<u>Amaya-Artunduaga v. U.S. Att'y Gen.</u>, 463 F.3d 1247, 1250 (11th Cir. 2006). We

review the decision of the Board to determine whether it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). "To reverse [those] fact findings, we must find that the record not only supports reversal, but compels it." Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003)

## III. DISCUSSION

Londono and Hernandez challenge the decision of the Board on two grounds. First, the couple argue that Londono has established that extraordinary circumstances excuse his untimely application for asylum. Second, the couple challenge the denial of Londono's application for withholding of removal. We address each issue in turn.

### A. We Lack Jurisdiction to Consider the Timeliness of Londono's Application for Asylum.

Londono argues that his reliance on Cristello's erroneous legal advice constitutes extraordinary circumstances to excuse the one-year deadline to file his application for asylum. The government argues that we lack jurisdiction to hear this claim. We agree with the government.

We are "'obligated to inquire into subject-matter jurisdiction sua sponte whenever it may be lacking.'" Chacon-Botero v. U.S. Att'y Gen., 427 F.3d 954, 956 (11th Cir. 2005) (quoting Cadet v. Bulger, 377 F.3d 1173, 1179 (11th Cir.

6

2004) (internal quotation marks omitted)). An alien must file his asylum application within one year after arrival in the United States, 8 U.S.C. § 1158(a)(2)(B), but he may obtain review after that deadline if he establishes "either the existence of changed circumstances which materially affect . . . eligibility for asylum or extraordinary circumstances relating to the delay in filing [the] application . . . ." Id. § 1158(a)(2)(D). Application of that deadline "is left exclusively to the Attorney General," and we do not have jurisdiction to disturb that decision. Id. § 1158(a)(3); Chacon-Botero, 427 F.3d at 956. We also lack jurisdiction to consider an issue when an alien has not "exhausted all administrative remedies available . . . as of right." 8 U.S.C. § 1252(d)(1).

We lack jurisdiction to review the application of the one-year deadline. Londono asks this Court to consider Cristello's alleged ineffectiveness, but we lack jurisdiction to entertain that argument. Even if we had jurisdiction to consider the issue, see 8 U.S.C. § 1252(a)(2)(D) (allowing judicial review of "constitutional claims or questions of law"), Londono did not present that argument to the Board. "[A]bsent a cognizable excuse or exception, we lack jurisdiction to consider claims that have not been raised before the [Board].'" Amaya-Artunduaga, 463 F.3d at 1250. We dismiss this part of Londono's petition for lack of jurisdiction.

*B. Substantial Evidence Supports the Decision to Deny Withholding of Removal.*

Londono and his wife allege that he established a well-founded fear of future persecution. He argues that he was persecuted by FARC based on his political activities and this creates a presumption of future persecution that the government failed to rebut. Londono's argument fails.

Londono's burden is well-established. To qualify for withholding of removal, an alien must prove that his "life or freedom would be threatened in [his country of nationality] because of his race, religion, nationality, membership in a particular social group, or political opinion." INA § 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A). The alien must show that he "more likely than not . . . will be persecuted or tortured upon being returned to her country." Sepulveda v. U.S. Att'y Gen ., 401 F.3d 1226, 1232 (11th Cir. 2005).

Substantial evidence supports the decision that Londono did not suffer political persecution. The anonymous telephone calls Londono received constitute harassment but do not rise to the level of persecution. See Silva v. U.S. Att'y Gen., 448 F.3d 1229, 1238 (11th Cir. 2006); Sepulveda, 401 F.3d at 1231. Londono did not see who shot his home and could not identify the individuals involved or establish that the attack was politically motivated. See Sepulveda, 401 F.3d at 1231. Although Londono was threatened, he was not harmed. See Silva, 448 F.3d at 1234, 1238.

8

Londono is not entitled to a presumption of a well-founded fear of future persecution because he failed to establish that he suffered past persecution and he offered no proof that he would be singled out due to his political beliefs if he returned to Colombia. See 8 C.F.R. § 208.16(b)(1); Sepulveda, 401 F.3d at 1231. Because Londono was not threatened while he was active in the Agamzada Liberal Party and the callers never identified whether they sought to end Londono's welfare or political activities, the record does not compel the conclusion that Londono was targeted because of his political opinion. Londono suggests that the immigration judge should have considered a pattern of persecution against persons who were similarly situated, but he does not identify a group that was targeted and did not present that argument below. See Amaya-Artunduaga, 463 F.3d at 1250. There is no evidence that Londono will be targeted when he returns because he left family members in Colombia who have not been threatened or harmed. See Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1259 (11th Cir. 2006).

## IV. CONCLUSION

We **DISMISS** the portion of Londono's petition challenging the timeliness of his application for asylum and **DENY** the portion of the petition challenging the denial of withholding of removal.

**PETITION DISMISSED IN PART, DENIED IN PART.**

9