[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAR 20, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-14717
Non-Argument Calendar

_____

Agency Nos. A78-621-380
A78-621-381

FERNANDO GOMEZ,
LUZ MARINA DEVIA
HECTOR H. GOMEZ
DANIEL A. GOMEZ,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(March 20, 2009)**

Before BIRCH, DUBINA and KRAVITCH, Circuit Judges.

PER CURIAM:

Fernando Gomez ("Gomez"), his wife Luz Marina Devia, and their two sons, Hector and Daniel, petition for review of a Board of Immigration Appeals' ("BIA") order affirming the denial of their application for withholding of removal under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1231(b)(3), and under the Convention Against Torture ("CAT"), 8 C.F.R. § 1208.16-18.[1] After careful consideration, we AFFIRM the BIA's decision and DENY the petition for review.

## I. BACKGROUND

The Gomez family fled their native country of Columbia and entered the United States on 31 March 1999 as non-immigrant visitors with permission to stay until 30 September 1999. AR at 217-18, 245-46, 273-74, 299-300. On 19 April 2001, they each received a notice to appear from the Department of Homeland Security ("DHS"). Id. The notices charged that the Gomez family had stayed beyond their authorized date and were therefore subject to removal under the INA. Id.

On 29 January 2001, Gomez filed an application for asylum and withholding of removal on behalf of himself and his family. Id. at 128, 130-31.

---

[1]Fernando Gomez, the lead petitioner, included his wife and minor sons as derivative applicants in his asylum application. AR 130-31. Therefore, our references to Gomez's claims for withholding of removal and CAT protection include those of his wife and two children.

Gomez claimed that he was mistreated and threatened by the FARC[2] based on his membership in the Columbian Liberal Party and his political opinion. Id. at 132. At the asylum hearing in November 2006, Gomez admitted the allegations in the notices to appear and conceded removability. Id. at 93-94. Gomez also withdrew his application for asylum as being untimely. Id.

With respect to his application for withholding of removal, Gomez testified at the hearing as follows. Gomez stated that he was a member of Columbia's Liberal Party but did not have an official position or work directly for the party. Id. at 97, 109. From 1995 through 1998, Gomez conducted approximately fifty computer training workshops for impoverished youths sent to him by the Liberal Party. Id. at 113-14. Gomez believed the FARC disapproved of these workshops because they enabled people to find jobs instead of joining the FARC. Id. at 98.

Gomez first encountered the FARC in January 1999. Id. at 99. A FARC commander named Ricuarte Lopez visited Gomez at his company under the pretext of being a bank officer who needed computer training classes for his employees. Id. Three days later, Lopez and two men kidnaped Gomez at gunpoint. Id. at 100. Lopez told Gomez he had been chosen to do some special

---

[2]The FARC, which stands for the Revolutionary Armed Forces of Columbia, is a leftist guerilla group in Columbia. See Ruiz v. U.S. Atty. Gen., 440 F.3d 1247, 1251, 1253 (11th Cir. 2006) (per curiam).

work and that he would be let go if he did his job well.  Id. Gomez then spent about twelve hours in captivity teaching five individuals how to use a computer program.  Id. at 101.  When the FARC returned Gomez to his house, they told him it was time for him to stop helping the Liberal Party and start working for the FARC.  Id. at 113.  Gomez stated he was not mistreated other than being pushed and kicked in the car.  Id. at 101.

About a month later, on 10 February 1999, Lopez again abducted Gomez at gunpoint for about thirty minutes.  Id. at 102.  Lopez ordered Gomez to create an "information system" they could use for "potential contributors."  Id.  In March, Lopez contacted Gomez to check on his progress.  Id. at 103.  When Gomez told him that he was still working on the idea, Lopez responded, "Mr. Engineer, we're not playing.  You have to do the job, stop hiding.  Start working or we're going to kill you or one of your sons."  Id.  Gomez decided to escape with his family.  Id. at 103.  Since they fled, the FARC has been calling Gomez's relatives living in Columbia looking for him and threatening to kill them if they do not reveal his location.  Id. at 105, 120.  Gomez and his family have been designated as "military objective[s]" by the FARC, meaning that they are destined to be killed.  Id. at 98-99.  Gomez believes that if they return to Columbia, the FARC will kill him or his children.  Id. at 105-06.

In addition to Gomez's testimony, his brother submitted a notarized statement that death threats against Gomez have "continued through phone calls for not having accepted the ideals of the guerilla movements and they are constantly inquiring about his whereabouts and his family's as well." Id. at 167. Gomez's sister-in-law, Esmeralda Pineda, also submitted a statement attesting that she had received numerous threatening phone calls during 2005 and 2006. Id. at 170. In October 2006, the FARC telephoned Pineda looking for Gomez because "they needed to settle some matters with him." Id. A few days later, three FARC members ordered Pineda at gunpoint to disclose Gomez's location. Id.

The Immigration Judge ("IJ") denied Gomez's application for withholding of removal and CAT protection. Id. at 59. The IJ found Gomez was not credible because he gave inconsistent and vague answers about whether the FARC was punishing him for his political opinions. Id. at 56-57. In addition, the IJ found the supporting letters from Gomez's brother and sister-in-law to be unpersuasive and insufficient to establish his claims. Consequently, even if Gomez was credible, the IJ found that he had "neither established past persecution, nor the risk that persecution is 'more likely than not.'" Id. at 59.

The BIA dismissed Gomez's appeal and ordered the petitioners' voluntary departure or removal. Id. at 3. The BIA declined to affirm the IJ's adverse

credibility finding because it was "unsupported by major inconsistencies involving a material element of the [petitioners'] claim." Id. at 2. However, the BIA adopted and affirmed the IJ's decision that the petitioners had failed to carry their burden of proof. Id. Even assuming Gomez's credibility, the petitioners had "failed to demonstrate that they suffered harm rising to the level of past persecution, or met the high burden of establishing that it is more likely than not that they will be persecuted in Columbia 'on account of' a protected ground under the [INA], or tortured." Id. (citation omitted). The BIA's reason for this conclusion was that the petitioners failed to establish that the FARC was interested in Gomez for anything other than his computer expertise and ability to provide computer training. Id. at 3. Furthermore, Gomez failed to show that the government was "unwilling or unable to control the persecuting individual or group." Id.

Gomez raises two issues in the petition for review. First, he contends that the IJ and the BIA erred in making an adverse credibility finding. Second, he submits that the IJ and BIA erred in denying withholding of removal and CAT protection on grounds that Gomez had not suffered past persecution and did not have a well founded fear of future persecution. In conjunction with the latter,

6

Gomez argues that the IJ and BIA made this determination without specifying sufficient legal reasons, thereby violating his due process rights.

The government responds that we lack jurisdiction over the petition because Gomez only challenged the IJ's adverse credibility determination in his brief to the BIA. According to the government, Gomez failed to raise on appeal to the BIA the alternative, merit-based finding of the IJ that Gomez did not sustain his burden of proof. Furthermore, the government asserts that Gomez has waived the issue in his petition to us. Rather than discuss the BIA's decision that Gomez failed to satisfy his burden of proof, Gomez again focuses on the IJ's adverse credibility determination. The government asserts that because Gomez makes only a passing reference to the merits of the BIA's decision, he has waived any challenge to that issue. Alternatively, the government asserts that the BIA correctly determined that Gomez failed to demonstrate past or future persecution on account of an enumerated ground, and that he was not entitled to withholding of removal under the INA or the CAT.

## II. DISCUSSION

A. Jurisdictional and Waiver Issues

We review de novo our subject-matter jurisdiction. See Amaya-Artunduaga v. U.S. Att'y Gen., 463 F.3d 1247, 1250 (11th Cir. 2006) (per curiam). Before

7

petitioning us for review, an individual must first exhaust his administrative remedies by raising his claims in his appeal to the BIA. See id.; 8 U.S.C. § 1252(d)(1).

Gomez did that here. In his notice of appeal to the BIA, Gomez stated that the IJ erroneously denied withholding of removal and CAT relief by overlooking major portions of the record and by making an erroneous credibility determination. AR 43. Additionally, Gomez argued in his brief to the BIA that the IJ erred in determining "without further legal analysis" or reasoning that Gomez had not established past or future persecution. Id. at 10-11. Gomez's discussion of the latter was limited by the IJ's primary focus on Gomez's credibility. Nevertheless, his notice of appeal and brief to the BIA sufficiently challenged both grounds of the IJ's decision to deny withholding of removal and CAT protection. Accordingly, we conclude that Gomez exhausted his administrative remedies and we have jurisdiction to consider these issues in his petition for review. Cf. Amaya-Artunduaga, 463 F.3d at 1250 (concluding that we lacked jurisdiction to review a challenge to an IJ's adverse credibility determination because the petitioner failed to raise the issue in his notice of appeal or brief before the BIA).

It is a closer call as to whether Gomez sufficiently challenged the merits of the BIA's decision in his petition to us. As the government acknowledges, Gomez

mentions in his brief that the IJ and BIA determined that he failed to establish past persecution or a well founded fear of future persecution. Although Gomez asserts this conclusion was erroneous and unsupported by proper legal analysis, he proffers no argument as to how he satisfied his burden of proof on that issue. Instead, Gomez continues to attack the IJ's adverse credibility determination.[3] That determination is no longer before us, however, because the BIA expressly did <u>not</u> affirm the IJ's adverse credibility finding. <u>See</u> <u>Singh v. U.S. Att'y Gen.</u>, 561 F.3d 1275, 1278 (11th Cir. 2009) (per curiam) (explaining that we will not review the IJ's decision on matters not expressly adopted or agreed with by the BIA).

We are thus compelled to agree with the government that Gomez's passing reference to the merits of the BIA's decision was insufficient to preserve this issue for appeal. Accordingly, Gomez has waived his challenge to his claims for withholding of removal and CAT protection. <u>See</u> <u>Sepulveda v. U.S. Att'y Gen.</u>, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) (per curiam) ("When an appellant fails to offer argument on an issue, that issue is abandoned."); <u>see</u> <u>also</u> <u>Greenbriar, Ltd.</u> <u>v. City of Alabaster</u>, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989) (concluding that mere reference in appellate brief to the district court's decision, without further elaboration on the merits of that decision, waived the issue on appeal).

---

[3]Gomez erroneously asserts that the BIA also concluded that he was not credible.

9

B.  Due Process Claim

Gomez asserts that the IJ and BIA denied him due process because they did not sufficiently explain why they denied withholding of removal and CAT protection.  We disagree.

"In order to establish a due process violation, an alien must show that he or she was deprived of liberty without due process of law . . . and that the asserted error caused him substantial prejudice."  Garcia v. U.S. Att'y Gen., 329 F.3d 1217, 1222 (11th Cir. 2003) (per curiam) (citations omitted).  An alien is not entitled to a full opinion by the BIA.  See id. at 1223.

Here, both the IJ and the BIA determined that Gomez did not qualify for withholding of removal and CAT protection because he did not establish past persecution or the risk that future persecution is more likely than not.  The IJ made this determination after detailing why he was "unimpressed by the extremely general letters that have been provided to support this claim."  AR 57.  The BIA's determination rested on its findings that the FARC was only interested in Gomez for his computer skills and Gomez had not shown that the government could or would not control the persecuting individual or group.  Id. at 3.  Thus, contrary to Gomez's suggestion, both the IJ and BIA adequately articulated reasons for

denying withholding of removal under the INA and the CAT. No due process violation has been shown.

### III. CONCLUSION

Based on the record, we conclude that we have jurisdiction to review the petition but that Gomez has waived his challenge to the BIA's denial of his claims for withholding of removal and CAT protection. We further conclude that his due process arguments are meritless. Accordingly, we AFFIRM the BIA's order in all respects and DENY Gomez's petition for review.

**PETITION DENIED.**