[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-15736
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 11, 2011
JOHN LEY
CLERK

Agency No. A098-377-663


GUILLERMO DONALD ALVAREZ PERALTA,
DORIS SUSY ARMIJOS PARRALES,
SUSY REBECA ALVAREZ ARMIJOS,
ISRAEL GUILLERMO ALVAREZ ARMIJOS,
SARA GENEEVEE ALVAREZ ARMIJOS,

                                                            Petitioners,

versus

U.S. ATTORNEY GENERAL,

                                                            Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(August 11, 2011)

Before HULL, PRYOR and KRAVITCH, Circuit Judges.

PER CURIAM:

Guillermo Donald Alvarez Peralta (Alvarez), a native and citizen of Ecuador, seeks review of the final order of the Board of Immigration Appeals (BIA) affirming the Immigration Judge's (IJ) denial of his application for asylum under the Immigration and Nationality Act (INA) § 208(a), 8 U.S.C. § 1158(a), withholding of removal under INA § 241(b)(3), 8 U.S.C. § 1231(b)(3), and relief under the United Nations Convention Against Torture (CAT), 8 C.F.R. § 208.16.[1]

Alvarez, his wife, and their three children arrived in the United States in 2004 and remained beyond the expiration of their visas. At that time, Alvarez filed an application for asylum, withholding of removal, and CAT relief claiming that he had been persecuted on account of his political opinion after he opposed the Colombian guerilla group the Armed Revolutionary Forces of Colombia (FARC).[2] In his application, Alvarez explained that he worked as a merchant marine on the ship Escorpio, which traveled from Ecuador to Colombia and Mexico. While employed on the ship, he learned that FARC was using the vessel to smuggle cocaine and weapons. Alvarez did not report what he knew for fear that FARC would harm him or his family.

---

[1] Alvarez's wife and children are derivative beneficiaries of his asylum application.

[2] Because Alvarez filed his application before May 2005, the REAL ID Act does not apply to it.

2

Nevertheless, in 2003, a man claiming to be a U.S. DEA agent visited Alvarez to discuss the illegal activities on the Escorpio. Alvarez refused to cooperate and believed that the man was actually a FARC guerilla. After the visit, Alvarez received threatening phone calls from FARC beginning in January 2004. As a result, Alvarez quit his job and came to the United States.

After his arrival, customs officials conducted a credible fear interview in which Alvarez stated the calls began in October 2003. He also described an incident that occurred in Mexico in August 2003 that he had not included in his asylum application. According to Alvarez, during a stop in Mexico, he observed about five men disembarking with suitcases. He unsuccessfully called for the crew to stop the men. Afterwards, the crew treated him with animosity and he learned that the ship was controlled by FARC.

In 2007, the Department of Homeland Security issued Alvarez and his family notices to appear, charging them as removable. At the removal hearing, Alvarez submitted a supplemental statement in which he described the incident in Mexico as two stowaways with suitcases disembarking and indicated that this occurred in March 2003. He also included an incident in December 2003 during which a man pointed a gun at his car while he was driving home from church. In addition, Alvarez submitted a letter from his sister, stating that in September 2009

3

one of her brothers told her that a Colombian national had warned him that Alvarez should not return to Ecuador because Alvarez had betrayed the stowaways on the Escorpio. Alvarez's mother also submitted a letter describing three encounters: First, in 2005, a man came looking for Alvarez; in 2008, some Colombians came to her home asking when Alvarez would return from Spain; and in 2009, two young men came to her with a message from FARC that they were taking revenge on informers.

In his own testimony at the removal hearing, Alvarez stated that his parents and seven siblings continued to live in Ecuador. He then described the incident in Mexico in March 2003, explaining that he saw two stowaways carrying large bags that contained drugs. He tried to alert the crew and the captain but the men disappeared. In October 2003, the purported DEA agent came to his home but he refused to cooperate. Then, in December 2003, a man with a gun stepped in front of his car at a traffic light. He believed this incident was related to the events on the Escorpio. He further explained that he received a threatening phone call from FARC in January 2004 warning him to keep his mouth shut. Finally, Alvarez described an incident that occurred after he left his job; Alvarez and a friend were attending a religious meeting when a car crossed in front of them and fired two shots. When asked why he had not mentioned this incident earlier, Alvarez stated

4

that he had but did not know why it was not written down.

The IJ denied relief, stating that he had "concerns" about Alvarez's credibility. The IJ noted the various inconsistencies between Alvarez's application, credible fear interview, and testimony, and explained that these inconsistencies were material and went to the heart of Alvarez's claims. Considering the totality of the circumstances, the IJ concluded that Alvarez was embellishing his testimony in an attempt to bolster his claims. Thus the IJ concluded that Alvarez's credibility was undermined by the inconsistencies and omissions and Alvarez failed to provide credible testimony.

Nevertheless, the IJ found that even if Alvarez was credible, he had failed to show past persecution based on the incidents he described because there was no nexus between the events and any protected ground. Alvarez appealed to the BIA, which affirmed the IJ's order of removal. The BIA found that the IJ had considered all the evidence, that the IJ made an explicit adverse credibility finding that was supported by the record, and that the IJ properly concluded that Alvarez had not established past persecution on account of a protected ground. The BIA further found that Alvarez had not shown that he had a well-founded fear of future persecution on account of a protected ground because the failure to cooperate with guerillas did not constitute an imputed political opinion.

In his petition for review, Alvarez argues that the BIA erred in affirming the IJ's credibility finding because the IJ was not explicit and failed to give adequate consideration to Alvarez's explanation for any inconsistencies between his application and his testimony before the IJ. Alvarez also argues that he was persecuted on account of imputed political opinion by FARC, because they assumed that he had reported their drug trafficking activities and that he was acting against them.[3]

When the BIA issues its own opinion, we review only the decision of the BIA, except to the extent that it approves or adopts the IJ's opinion. *Lopez v. U.S. Att'y Gen.*, 504 F.3d 1341, 1344 (11th Cir. 2007). We review *de novo* the BIA or IJ's legal determinations and apply the substantial evidence test to all factual determinations. *Mejia v. U.S. Att'y Gen.*, 498 F.3d 1253, 1256 (11th Cir. 2007). Thus, we will affirm the BIA's decision if it is supported by

---

[3] We review our subject-matter jurisdiction *de novo*. *Amaya-Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1250 (11th Cir. 2006). We lack jurisdiction to consider a claim raised in a petition for review unless the petitioner has exhausted his administrative remedies with respect thereto. *Id.* (citing 8 U.S.C. § 1252(d)(1)). Additionally, issues not briefed on appeal are deemed abandoned. *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005). In this case, we conclude that Alvarez has abandoned his claims for withholding of removal or CAT relief because he failed to raise them in his brief. Furthermore, Alvarez did not raise these claims in his notice of appeal to the BIA, so he failed to exhaust them in his administrative appeal. Alvarez also failed to administratively exhaust one argument that he now attempts to raise on appeal - that the IJ failed to consider his asserted explanations for the omissions and discrepancies in his testimony. Thus, we lack jurisdiction to consider this issue as well.

reasonable, substantial, and probative evidence on the record considered as a whole. *Id.* In order to conclude the BIA's decision should be reversed, we must find that the record not only supports the conclusion, but compels it. *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (*en banc*).

An alien who arrives in, or is present in, the United States may apply for asylum. 8 U.S.C. § 1158(a)(1). The U.S. Attorney General or Secretary of the Department of Homeland Security has discretion to grant asylum if the alien meets the INA's definition of a "refugee." 8 U.S.C. § 1158(b)(1). The INA defines a "refugee" as:

> any person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself . . . of the protection of, that country because of persecution or a well-founded fear of persecution on account of . . . political opinion.

8 U.S.C. § 1101(a)(42)(A). The statutes governing asylum protect not only against persecution by government forces, but also against persecution by non-governmental groups that the government cannot control, including paramilitary or guerilla forces. *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1257 (11th Cir. 2006). But even in those cases, the political opinion at issue is the victim's, not the persecutor's. *Id.* at 1257-58. Evidence of past persecution that is consistent with either acts of private violence or the petitioner's failure to

7

cooperate with guerillas, or that merely shows that a person has been the victim of criminal activity, does not constitute evidence of persecution based on a statutorily protected ground. *Id.* at 1258; *see also Sanchez v. U.S. Att'y Gen.*, 392 F.3d 434, 436, 438 (11th Cir. 2004) (holding that harassment by the FARC for refusing to cooperate with their demands for money did not establish a nexus to a statutorily protected ground).

The asylum applicant has the burden of proving the "refugee" status. *Mejia,* 498 F.3d at 1256; 8 C.F.R. § 208.13(a). In order to carry this burden, the applicant must, with specific and credible evidence, establish (1) past persecution on account of a statutorily protected ground or (2) a well-founded fear of future persecution on account of a protected ground. *Mejia*, 498 F.3d at 1256; 8 C.F.R. § 208.13(b).

The IJ must make a clean determination of credibility, such that the reviewing court is not "left in the dark" as to whether the IJ believes the asylum seeker's testimony. *Yang v. U.S. Att'y Gen.*, 418 F.3d 1198, 1201 (11th Cir. 2005). An implicit finding that the testimony is not credible is not sufficient. *Id.*

In this case, the record shows that the adverse credibility finding is

supported by the record.[4]  There were numerous inconsistencies and omissions between Alvarez's asylum application, credible fear interview, and testimony at his removal hearing.  *See Chen v. U.S Att'y Gen.*, 463 F.3d 1228, 1230 (11th Cir. 2006).  These inconsistencies and omissions, which were material and went to the heart of Alvarez's claims of persecution, were sufficient for the IJ to conclude that Alvarez was not credible.

Furthermore, based on this record, even if we were to consider Alvarez's testimony credible, we are not compelled to conclude that Alvarez was persecuted on the basis of an imputed political opinion.  Instead, the record shows that he was employed on a ship doing illegal business with FARC, and that he was threatened after he became a risk to the illegal operations.  *See Sanchez*, 392 F.3d at 436, 438.  Accordingly, even if Alvarez's testimony is fully credited, substantial evidence supports the BIA's determination that he failed to demonstrate a nexus between the threats and a protected ground for asylum.

**PETITION DISMISSED IN PART, DENIED IN PART.**

---

[4]  The IJ made a clear and explicit adverse credibility finding and reiterated that finding throughout his analysis.  The BIA then squarely denied relief on that basis.  In his notice of appeal to the BIA, Alvarez recognized that the IJ had made an adverse credibility determination.  Thus, his challenge to the IJ's credibility finding is without merit.