[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-11149
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 2, 2011
JOHN LEY
CLERK

Agency No. A087-441-540

HUI HUA LIN,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(November 2, 2011)

Before CARNES, HULL and PRYOR, Circuit Judges.

PER CURIAM:

Hui Hua Lin, a native and citizen of the People's Republic of China, seeks

review of the Board of Immigration Appeals' decision affirming the Immigration

Judge's denial of her applications for asylum, withholding of removal, and relief

under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment. In her original 2008 asylum application, Lin asserted that she feared persecution based upon her political opinion. She stated that if returned to China she might be forced to undergo sterilization because she had violated the family planning policy by having one child and expecting a second one. Her second child was born in February 2009. In a 2010 supplemental statement, filed the Friday afternoon before her Monday asylum hearing, Lin argued for the first time that she feared persecution based upon her religious belief as a Christian.

About her asylum application, Lin argues that the BIA erred by upholding both the IJ's adverse credibility determination regarding her fear of persecution based on religious beliefs and its determination that she had not demonstrated a well-founded fear of future persecution based on her violation of China's family planning policy. Lin did not argue to the BIA that the IJ erred by denying her withholding or CAT claims. Even so, she asks us to reverse those decisions as well.

I.

We review de novo our subject matter jurisdiction. Amaya-Artunduaga v. U.S. Att'y Gen., 463 F.3d 1247, 1250 (11th Cir. 2006). "We lack jurisdiction to

consider a claim raised in a petition for review unless the petitioner has exhausted [her] administrative remedies" for that claim. Id. (citing 8 U.S.C. § 1252(d)(1)). Because Lin failed to argue to the BIAthat she was entitled to withholding of removal and CAT relief, she did not exhaust those claims, and we lack jurisdiction to consider them.

## II.

As for Lin's asylum claim, because the BIA expressly adopted and affirmed the IJ's decision without an opinion, we review the IJ's and BIA's decisions. See Ruiz v. Gonzales, 479 F.3d 762, 765 (11th Cir. 2007). "We review the IJ's factual determinations under the substantial-evidence test." Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1286 (11th Cir. 2005). We must "affirm the [IJ's] decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001) (quotation marks omitted). Under this test, "we view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc). Accordingly, "[t]o conclude the BIA's decision should be reversed, we must find that the record not only supports the conclusion, but compels it." Ruiz, 479 F.3d at 765 (quotation marks omitted).

A.

The IJ may deny asylum petitions solely on an adverse credibility determination, particularly if the applicant fails to produce corroborating evidence. See Chen v. U.S. Att'y Gen., 463 F.3d 1228, 1231 (11th Cir. 2006). Under the applicable standard, credibility determinations are based on the totality of the circumstances and all relevant factors "without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim." 8 U.S.C. § 1158(b)(1)(B)(iii). Once an adverse credibility finding is made, the burden shifts to the applicant to show that the finding is not supported by "specific, cogent reasons" or was not based on substantial evidence. Id. at 1232 (quotation marks omitted). "[A] credibility determination, like any fact finding, may not be overturned unless the record compels it." Id. (quotation marks omitted).

The record does not compel reversal of the IJ's determination that Lin did not credibly fear persecution due to her Christian faith upon return to China. Lin began attending Christian churches as early as 2005 and strongly considered baptism in 2006. Lin listed her religion as Christian in her 2008 asylum application but did not assert that she feared persecution for her Christian faith. Instead, her application stated that she sought asylum based on her political

4

opinion and the Torture Convention. In an attached personal statement, she asserted that her application was based on her fear of persecution in China based on her violation of China's family planning law. She expressed her fear of being forced to undergo sterilization if she returned to China, but did not mention any fear of religious persecution. She testified that she "assume[d] that [it] is only a little bit of persecution" based on religion in China.

The IJ found that if Lin truly feared religious persecution in China, she was on notice that she should assert that ground for asylum relief because her husband left China and was granted asylum in the United States because of religious persecution. He also is a Christian. But Lin did not raise this ground for asylum until the Friday before her Monday asylum hearing in 2010. The IJ concluded that this late filing was "suspicious" and "inconsistent with the fact that if [Lin] believe[d] she would be persecuted on account of her religion then she would have mentioned that in her asylum application." Lin has failed to show this finding was not based on specific, cogent reasons or not based on substantial evidence.

B.

Lin also contended that she had a well-founded fear of persecution because she would be subject to forced sterilization upon return to China. Lin claimed that Chinese population control measures permitted a couple to have only two children

5

before forced sterilization, and she had two while living in America. The IJ found the State Department Country Profile of China was more reliable than the evidence Lin submitted. The profile found that the birth-limitation policy prohibited forced sterilization or abortion, and the limitation policy varied significantly nationwide. It also found that enforcement of the policy was less stringent in rural areas, such as the Fujian Province, where Lin lived before she came to this country. The profile also showed that the Fujian Province reported no forced sterilizations during the last ten years.

The evidence Lin presented either was not from objective sources or was unauthenticated. Her asylum application included letters from Lin's sister and two friends in the Fujian Province who alleged that they were forcibly sterilized after the birth of their second child. Those witnesses were unavailable for cross examination, and besides, those women purported to have their children while in China, not overseas as Lin had. The government notices that Lin proffered to illustrate the possible punishment that she faced were not authenticated by any reputable organization or individual, were not signed, were obtained only for the hearing, and did not identify their authors. The IJ thus found that those documents had little evidentiary weight, noting that "documentation from China, particularly

6

from Fujian Province, is subject to widespread fabrication and fraud." The record as a whole does not compel reversal of the IJ's ruling.

**PETITION DISMISSED IN PART, DENIED IN PART.**