[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-13692

_____

Agency No. A099-675-822

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 4, 2012
JOHN LEY
CLERK

CLAUDIO CUEVA,
ROSALINA GARCIA-JUAREZ DE CUEVA,
CLAUDIA MARIELA CUEVA-GARCIA,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(January 4, 2012)

Before HULL, MARCUS and BLACK, Circuit Judges.

PER CURIAM:

Claudio Cueva, a native and citizen of Honduras, petitions this Court for

review of the Board of Immigration Appeals' ("BIA") decision affirming the Immigration Judge's ("IJ") order finding him removable and denying his application for asylum, withholding of removal, and relief under the United Nations Convention Against Torture ("CAT"). After thorough review and having the benefit of oral argument, we deny Cueva's petition.[1]

## I.

Cueva, his wife, and his daughter are natives and citizens of Honduras. They illegally entered the United States near Brownsville, Texas, on April 13, 2006. The next day, they were issued Notices to Appear ("NTA"), charging them with removability as aliens present in the United States without having been admitted or paroled. The Cuevas appeared before an IJ, admitted the allegations in the NTAs, and conceded removability.

On June 19, 2007,[2] Cueva filed an application for asylum, withholding of removal, and CAT relief, alleging that he had been persecuted in Honduras on

---

[1] Cueva's wife, Rosalina Garcia-Juarez de Cueva, and daughter, Claudia Mariela Cueva-Garcia, also natives and citizens of Honduras, petition for review as derivative beneficiaries of Cueva's asylum application.

[2] The record shows, and the IJ found, that Cueva had attempted to file the application in March 2007, which satisfied the INA's requirement that the petitioner for asylum file an application within one year of entering the country. See 8 U.S.C. § 1158(a)(2)(B).

account of his membership in a particular social group.[3]  Specifically, in a written statement attached to his application entitled "My Story," Cueva explained that he was a merchant who belonged to a social group in the city of San Pedro Sula, formed by small and medium-sized companies opposed to corruption and violence by the Maras, a gang that was "the main problem affecting the entire Central America."

On October 10, 2008, Cueva appeared and testified at a removal hearing before an Immigration Judge.  Cueva testified that, while driving home from a business trip on January 25, 2005, he saw two vehicles approaching him and was shot by a man in one of the vehicles.  Cueva said that the individuals who approached and shot him belonged to the Maras.  When asked how he knew that the assailants were members of the Maras, Cueva responded that he had "visual contact" with the shooter and that he could see an "MS" gang tattoo on the shooter's chest and face.[4]  Cueva also testified that his family received threatening phone calls in April 2006 and that the caller told them to tell Cueva that "nobody messes with MS."

On December 9, 2008, the IJ denied Cueva's application for asylum, withholding of removal, and CAT relief.  The IJ found Cueva's testimony not credible, including his testimony regarding the identity of the shooter and of those

---

[3]  Cueva's application did not seek relief based on his political opinion.

[4]  The Maras gang is also known as the "Mara Salvatrucha" or "MS-13."

3

responsible for making threatening telephone calls. Although it was not contested that Cueva was in fact shot and severely injured, the IJ found that Cueva failed to present credible and sufficient evidence to establish that he suffered past persecution, or had a well-founded fear of future persecution, on account of any of the statutorily protected grounds for asylum. The IJ found that Cueva failed to establish that he was shot on account of his membership in a particular social group or on account of his imputed political opinion.[5]

Cueva appealed to the BIA. On July 28, 2009, the BIA dismissed Cueva's appeal after concluding that the incidents were not committed on account of a protected ground and that Cueva's fear of returning to Honduras was based on a "fear . . . of general criminal activity." The BIA did not address Cueva's credibility. After Cueva petitioned this Court for review of the BIA's decision, the government moved to remand so that the BIA, inter alia, could "consider the [IJ's] adverse credibility determination and clarify its rejection of Mr. Cueva's claim that he was persecuted on account of a protected ground." Soon thereafter, we granted the motion, vacated the BIA's decision, and remanded the case.

On July 12, 2010, the BIA again dismissed Cueva's appeal. This time, the BIA

---

[5] The IJ referenced political opinion even though Cueva had not raised that claim in his application or during the removal hearing. After the IJ's decision, Cueva did raise a political opinion asylum claim in his appeal to the BIA. **[AR at 38.]**

concluded that the IJ did not err in finding that Cueva's testimony was not credible. The BIA also concluded that the social group proposed by Cueva -- businessmen against corruption and the Maras -- was "not based on a common, immutable characteristic, nor [was] it visible to society at large." In light of the IJ's adverse credibility determination, the BIA agreed with the IJ's determination that Cueva had not established a claim to asylum on account of political opinion. The BIA further concluded that, because Cueva had failed to establish eligibility for asylum, he had also failed to satisfy the higher standard for withholding of removal. Finally, the BIA concluded that the record did not contain independent evidence -- apart from Cueva's incredible testimony -- sufficient to support Cueva's CAT claim.

## II.

The BIA adopted the IJ's reasoning as to the adverse credibility determination; thus, we review both the IJ's and BIA's decisions concerning Cueva's credibility. See Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). We review factual determinations under the substantial evidence test, Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1286 (11th Cir. 2005), and we must "affirm the BIA's [or IJ's] decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole," Najjar, 257 F.3d at 1284 (internal quotation marks omitted). Under this test, we view "the record evidence in the light most favorable to the

5

agency's decision and draw all reasonable inferences in favor of that decision." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc). We may reverse an IJ's factual findings "only if the evidence compels a reasonable fact finder to find otherwise." Todorovic v. U.S. Att'y Gen., 621 F.3d 1318, 1324 (11th Cir. 2010) (internal quotation marks omitted).

## III.

The REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 302, "grant[s] more latitude to IJs in making credibility determinations in applications for asylum and withholding of removal filed (as [Cueva's] was) after May 11, 2005." Xia v. U.S. Att'y Gen., 608 F.3d 1233, 1239-40 (11th Cir. 2010). The Act establishes the following standard for making an adverse credibility determination:

> Considering the totality of the circumstances, and all relevant factors, a trier of fact may base a credibility determination on the demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record (including the reports of the Department of State on country conditions), and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor.

8 U.S.C. § 1158(b)(1)(B)(iii). In addition, an "IJ must offer specific, cogent reasons

6

for an adverse credibility finding." Forgue, 401 F.3d at 1287.

"[I]n the absence of corroborating evidence, an adverse credibility determination may be sufficient to support the denial of an application." Mohammed v. U.S. Att'y Gen., 547 F.3d 1340, 1345 (11th Cir. 2008). "Of course, an adverse credibility determination does not alleviate the IJ's duty to consider other evidence produced by an asylum applicant. That is, the IJ must still consider all evidence introduced by the applicant." Forgue, 401 F.3d at 1287 (emphasis omitted). Nevertheless, the IJ and the BIA need not "address specifically each claim the petitioner made or each piece of evidence the petitioner presented, but they must consider the issues raised and announce their decision in terms sufficient to enable a reviewing court to perceive that they have heard and thought and not merely reacted." Ayala v. U.S. Att'y Gen., 605 F.3d 941, 948 (11th Cir. 2010) (alteration and quotation omitted).

After thorough review of the record, we conclude that substantial evidence supports the findings of the IJ and BIA that Cueva's testimony was not credible. As the IJ and the BIA observed, Cueva's testimony is inconsistent with documents prepared contemporaneously with the shooting incident in January 2005 and the threatening telephone calls in April 2006. The January 2005 police report indicated that Cueva's attackers were "unknown" individuals. A contemporaneous news article

7

from "La Tribuna" submitted by Cueva also stated that "unknown" individuals shot at Cueva and cites Cueva's friends as stating that they had "no idea why [the Cuevas] were attacked." Yet, in his oral testimony, Cueva stated that he had visual contact with the shooter, that the shooter had a large "MS" tattoo on his chest and face, and that the shooter belonged to the Maras. As for the telephone calls, Cueva stated that the Maras had called his family and told them to "tell him that nobody messes with MS." Yet the contemporaneous police report indicated that the callers were unknown persons.

Although Cueva's asylum application form referred to the Maras, the IJ and the BIA did not err in considering the fact that Cueva omitted from both his application and his written statement the significant information that (1) he had "visual contact" with the shooter; (2) the shooter had an "MS" tattoo on his face and chest; and (3) the Maras called his family and said "nobody messes with MS." Moreover, Cueva's written statement identified the attackers as "delinquents" and made no mention of the tattoos. When Cueva was asked on cross-examination at the October 2008 hearing why he had not mentioned the identifying "MS" tattoo in his asylum application, Cueva only replied, "I don't understand the question."

In the face of these inconsistencies between the contemporaneous documentary evidence and Cueva's oral testimony, along with the key omissions regarding the

8

identity of Cueva's assailants and of the individuals who made threatening telephone calls to Cueva and his family, we conclude that substantial evidence supports the IJ's adverse credibility finding and that the BIA was not compelled to conclude otherwise.[6]  Finally, as for his CAT claim, Cueva has failed to produce evidence sufficient to meet his burden of establishing "that it is more likely than not that he . . . would be tortured if removed" to Honduras.  8 C.F.R. § 208.16(c)(2).  Nor has Cueva produced evidence demonstrating that any such torture would be "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity."  Id. § 208.18(a)(1).

**PETITION DENIED.**

---

[6] At oral argument, Cueva abandoned his claim that he suffered, or will suffer, persecution on account of his membership in a particular social group.  He has therefore abandoned the only protected statutory ground invoked in his original asylum application.  On appeal, the only protected statutory ground advanced by Cueva as a reason for his past persecution or his fear of future persecution is political opinion, which the IJ considered sua sponte and which Cueva first raised in his appeal to the BIA.  Because we affirm the BIA's adverse credibility determination, which was a sufficient basis for the denial of Cueva's application in this case, see Mohammed, 507 F.3d at 1345, we need not reach the merits of the political opinion issue, and we decline to address whether Cueva adequately raised and exhausted a political opinion claim in order to give us jurisdiction to consider it.  See Amaya-Artunduaga v. U.S. Att'y Gen., 463 F.3d 1247, 1249-51 (11th Cir. 2006) ("We lack jurisdiction to consider a claim raised in a petition for review unless the petitioner has exhausted his administrative remedies with respect thereto.").