[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 11, 2006
THOMAS K. KAHN
CLERK

No. 06-10755
Non-Argument Calendar
_____

BIA No. A96-269-906

ANDRES AMAYA-ARTUNDUAGA,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(September 11, 2006)

Before DUBINA, BLACK and HULL, Circuit Judges.

PER CURIAM:

Andres Amaya-Artunduaga (Amaya) petitions for review of the Board of Immigration Appeals' (BIA) order adopting and affirming an Immigration Judge's (IJ's) decision finding him ineligible for asylum and denying his application for withholding of removal under the Immigration and Nationality Act (INA), 8 U.S.C. §§ 1158, 1231, as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub. L. No. 104-208, 110 Stat. 3009 (1996) (amended by the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 302 (2005)).[1]  After review, we dismiss the petition.

## I.  BACKGROUND

Amaya, a native and citizen of Colombia, arrived in the United States on or about March 28, 2002.  On February 18, 2003, the Department of Homeland Security sent Amaya a Notice to Appear, charging him with removability under 8 U.S.C. § 1182(a)(6)(A)(i) as an alien present in the United States without having been admitted or paroled.  Conceding he was removable as charged, Amaya sought relief under the INA, asserting he was eligible for asylum and withholding of removal based on his past persecution and well-founded fear of future persecution by the Revolutionary Armed Forces of Colombia (FARC) on account

---

[1] Because Amaya's removal and asylum proceedings commenced after April 1, 1997, the permanent provisions of IIRIRA govern his petition for review.

of his political opinion.[2]

In his asylum application, Amaya referenced several events in 2001 and 2002. He explained, for example, that after attending a political demonstration in support of Álvaro Uribe-Vélez in October 2001, members of the FARC pulled his vehicle to the side of the road and warned him, along with his uncle and two others, against any political activity under pain of death. Further, Amaya claimed that in December 2001, after he filmed a political meeting and distributed political literature, the FARC sent him a note describing Amaya and his family as military targets. Finally, Amaya stated that in February 2002, while campaigning for Uribe-Vélez, he was abducted by members of the FARC. He noted the FARC forced him and other abductees to walk several hours in the mountains, during which they beat him and assassinated a sick woman. Soon thereafter, Amaya moved to Bogotá and Cali, but fled because of threatening phone calls from the FARC.

At his hearing, Amaya recounted these events. For the first time, however, he stated that during the October 2001 incident, members of the FARC not only threatened him, but subjected him to physical abuse. Similarly, Amaya testified at

---

[2] Amaya also sought relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment (CAT), 8 C.F.R. § 208.16(c). Because he does not appeal the denial of CAT relief, we need not discuss this claim.

the hearing that his February 2002 abduction lasted three weeks, not a few days. When asked about these inconsistencies, Amaya was unable to proffer an explanation. Citing these and several other incongruities and implausibilities, the IJ expressly found Amaya incredible, and denied his claims for asylum and withholding of removal.

The BIA dismissed Amaya's appeal, finding the IJ's decision evinced no clear error. While specifically declining to adopt those portions of the IJ's opinion based on conjecture, speculation, and personal belief, the BIA held that significant inconsistencies in Amaya's narrative, especially those regarding the October 2001 and February 2002 incidents, supported the IJ's adverse credibility determination. Amaya then petitioned this Court for review, asserting (1) the IJ erred in finding him incredible; (2) the IJ's bias against him rendered the proceedings fundamentally unfair; and (3) the IJ failed to make a finding regarding past persecution in relation to his claim for withholding of removal.[3]

---

[3] Amaya's third claim—that the IJ was obligated to make a finding regarding past persecution with respect to his claim for withholding of removal—is without merit. The IJ denied Amaya asylum relief, and it is axiomatic that where an applicant fails to meet the burden for asylum, he necessarily cannot meet the more stringent burden for withholding of removal. *See Al Najjar v. Ashcroft*, 257 F.3d 1262, 1303 (11th Cir. 2001); *see also Forgue v. U.S. Att'y Gen.*, 401 F.3d 1282, 1288 n.4 (11th Cir. 2005). Thus, because Amaya failed to meet the burden on his asylum claim, his claim for withholding of removal necessarily failed. Having disposed of Amaya's asylum claim as such, the IJ was not obligated to make specific findings with respect to withholding of removal.

## II. DISCUSSION

A.     *Adverse Credibility Determination*

In his petition, Amaya first challenges the IJ's and BIA's adverse credibility determinations, primarily arguing the IJ abused his discretion by (1) requiring corroborating evidence to substantiate Amaya's story; (2) basing the adverse credibility determination on speculation and conjecture; and (3) basing the adverse credibility determination on minor discrepancies and typographical problems. The Government, in turn, asserts because Amaya failed to challenge the adverse credibility determination before the BIA, we lack jurisdiction over Amaya's claim. In the alternative, the Government argues the IJ's and BIA's credibility findings are supported by substantial evidence.

We review our subject matter jurisdiction de novo. *See Gonzalez-Oropez v. U.S. Att'y Gen.*, 321 F.3d 1331, 1332 (11th Cir. 2003). We lack jurisdiction to consider a claim raised in a petition for review unless the petitioner has exhausted his administrative remedies with respect thereto. *See* 8 U.S.C. § 1252(d)(1); *see also Sundar v. INS*, 328 F.3d 1320, 1323 (11th Cir. 2003) (opining the exhaustion requirement is jurisdictional, such that we "lack jurisdiction to consider claims that have not been raised before the BIA"). Thus, if an alien fails to challenge an adverse credibility determination in his appeal to the BIA, we lack jurisdiction to

5

consider such a challenge in his petition for review.

In the instant case, Amaya failed to challenge the IJ's adverse credibility determination in both his notice of appeal and brief before the BIA. The BIA, however, addressed the IJ's adverse credibility determination *sua sponte*. This leaves open the question of whether we have jurisdiction over a claim when an alien, without excuse or exception, fails to exhaust that claim, but the BIA nonetheless considers the underlying issue *sua sponte*. We have no clear guidance on this narrow issue from our sister circuits. *See Nazarova v. INS*, 171 F.3d 478, 489 (7th Cir. 1999) (Manion, J., dissenting) (discussing, but not clearly resolving, this question).

Nonetheless, circuit precedent clearly states that, absent a cognizable excuse or exception, "we lack jurisdiction to consider claims that have not been raised before the BIA." *Sundar*, 328 F.3d at 1323. On appeal to the BIA in this case, Amaya argued the merits of his claim for asylum and withholding of removal. He did not, however, challenge the IJ's adverse credibility determination in any way. Thus, Amaya, without excuse or exception, failed to raise his claim regarding the adverse credibility determination before the BIA and, therefore, we lack jurisdiction to consider it under the clear dictates of circuit precedent. *See Fernandez-Bernal v. U.S. Att'y Gen.*, 257 F.3d 1304, 1317 n.13 (11th Cir. 2001).

As we emphasized in *Sundar*, "[t]he rules are clear: before proceeding to federal court, an alien must exhaust his or her administrative remedies." *Sundar*, 328 F.3d at 1323 (quoting *Kurfees v. INS*, 275 F.3d 332, 336 (4th Cir. 2001)).

That the BIA reviewed the IJ's adverse credibility determination *sua sponte* does not alter our conclusion. Certainly, the exhaustion doctrine exists, in part, to avoid premature interference with administrative processes and to allow the agency to consider the relevant issues. *See, e.g.*, *Sun v. Ashcroft*, 370 F.3d 932, 940 (9th Cir. 2004). Courts have also opined, however, that § 1252(d)(1)'s exhaustion requirement ensures the agency "has had a full opportunity to consider a petitioner's claims," *Theodoropolous v. INS*, 358 F.3d 162, 171 (2d Cir. 2004), and "to allow the BIA to compile a record which is adequate for judicial review," *Dokic v. INS*, 899 F.2d 530, 532 (6th Cir. 1990). Reviewing a claim that has not been presented to the BIA, even when the BIA has considered the underlying issue *sua sponte*, frustrates these objectives. An issue or claim does not exist in isolation; rather, each is presented in the context of argument. Requiring exhaustion allows the BIA to consider the niceties and contours of the relevant arguments, thereby "full[y] consider[ing]" the petitioner's claims and "compil[ing] a record which is adequate for judicial review." If, however, the BIA addresses an issue *sua sponte*, and a petitioner is entitled to then base arguments thereon in his

7

petition for review before the federal courts, we cannot say the BIA fully considered the petitioner's claims, as it had no occasion to address the relevant arguments with respect to the issue it reviewed, nor can we say there is any record, let alone an adequate record, of how the administrative agency handled the claim in light of the arguments presented. In sum, we think the goals of exhaustion are better served by our declining to review claims a petitioner, without excuse or exception, failed to present before the BIA, even if the BIA addressed the underlying issue *sua sponte*. Accordingly, applying § 1252(d)(1)'s exhaustion requirement, we dismiss Amaya's challenge to the adverse credibility determination for lack of jurisdiction.

B.    *Due Process Claim*

Amaya next argues the proceedings before the IJ denied him due process of law. More specifically, Amaya asserts the IJ "color[ed] the hearing with his belief system" and treated Amaya with "heavy sarcasm and hostility," such that the proceedings were fundamentally unfair. The Government, in turn, asserts we lack subject matter jurisdiction over Amaya's due process claim because he failed to object to the IJ's behavior in his filings before the BIA.

To reiterate, we review our subject matter jurisdiction de novo. *See Gonzalez-Oropez*, 321 F.3d at 1332. Generally speaking, we lack jurisdiction to

8

consider a claim raised in a petition for review unless the petitioner has exhausted his administrative remedies with respect thereto. *See* 8 U.S.C. § 1252(d)(1); *see also Sundar*, 328 F.3d at 1323. We have recognized, however, that "[s]ome courts have indicated in dicta that . . . some due process claims do not require exhaustion, because the BIA does not have the power to adjudicate those claims." *Sundar*, 328 F.3d at 1325. Nonetheless, "[t]hose same courts . . . have held that where the claim is within the purview of the BIA which can provide a remedy, the exhaustion requirement applies with full force." *Id.* Although we have never specifically determined which due process claims require exhaustion, other circuits have determined that procedural due process claims, as well as procedural errors argued in due process terms, must be raised before the BIA. *See, e.g., Vargas v. INS*, 831 F.2d 906, 908 (9th Cir. 1987) (holding due process claims predicated on procedural errors subject to exhaustion requirement).

Amaya's allegation of a due process violation—that he was denied a full and fair hearing before a neutral factfinder—is precisely the kind of procedural error which requires exhaustion. *See, e.g., Abduhlrahman v. Ashcroft*, 330 F.3d 587, 596 n.5 (3d Cir. 2003) (noting "[a]lthough grounded in procedural due process, a claim of IJ bias remains subject to administrative exhaustion"); *Sanchez-Cruz v. INS*, 255 F.3d 775, 780 (9th Cir. 2001) (same). Moreover, unlike

9

his challenge to the adverse credibility determination, the BIA did not consider the merits of Amaya's due process argument, and, therefore, there is no final agency decision with respect to this claim. Thus, because Amaya failed to raise his due process claim before the BIA, we lack jurisdiction to consider it. Accordingly, we dismiss this part of his petition for lack of jurisdiction.

### III.  CONCLUSION

For the foregoing reasons, we dismiss Amaya's petition for review.

**PETITION DISMISSED.**