[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAR 12, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-14527
Non-Argument Calendar

_____

Agency Nos. A97-924-773
A97-924-774

AZIM DOMLATJANOV,
MARIJA SNITKO,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(March 12, 2007)**

Before CARNES, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Azim Domlatjanov, a native of Uzbekistan, and his wife, Marija Snitko, a

resident of Latvia, were admitted to the United States as non-immigrant visitors. Both stayed longer than the six months they were allowed to visit. The Immigration and Naturalization Service charged them with removability for overstaying their trip to the United States, in violation of 8 U.S.C. § 1227(a)(1)(B).

Domlatjanov and Snitko conceded they were removable. At the same time, they applied for asylum, withholding of removal, and relief under the Convention Against Torture. Domlatjanov claimed that he was persecuted in Uzbekistan for practicing his Baptist faith. Snitko relied on her husband's application.

In support of their claims, Domlatjanov testified that he converted to the Baptist faith in 1978. He further testified that starting in 1995 he had several confrontations in Uzbekistan because of his religion. Domlatjanov testified to the following incidents:

- In 1995, Domlatjonov was expelled from the Uzbek national rocket modeling team for being a Baptist.

- On April 12, 1997, the Uzbek police interrupted Domlatjanov at an unregistered prayer service in the home of one of his fellow congregants. The police insulted and interrogated those who were praying and warned them that they would be criminally prosecuted the next time they held a service without registering.

- In March 1998, at another secret prayer meeting, the police, wearing

2

camouflage, stopped the prayers, searched everyone who was there, and confiscated all Baptist religious material found in the house. Domlatjanov and some of his fellow congregants were also taken to the police station for three days. While there, the police tore off a toenail on Domlatjanov's left foot with pliers and beat him with a baton. (We will refer to this as the "toenail incident.")

- In May 1999, following a prayer meeting, Domlatjanov and other congregants were waiting at a bus stop to go home. While waiting, ten people approached them and told them that Baptists did not belong in Uzbekistan. The ten people then physically attacked Domlatjanov and his fellow congregants. During the altercation, Domlatjanov was stabbed with a knife in his left hand.

- In March 2000, Domlatjanov's sixteen-year-old son was attacked at school by four of his classmates. His nose and face were injured as a result of the attack. The attackers claimed to beat Domlatjanov's son because his father was Baptist.

- In September 2002, when returning home from a prayer meeting, five men, who Domlatjanov believed were Muslims, beat him and threatened to kill him. The men said that Baptists do not belong in Uzbekistan. As a result of this beating, Domlatjanov had bruising on his neck.

Domlatjanov also submitted documentary evidence to the immigration judge supporting his claim that he was persecuted on account of his Baptist faith. These supporting documents included (1) a letter from the First Baptist Church of Florida regarding Domlatjanov's involvement in the church, (2) letters from Domlatjanov's children in Uzbekistan stating that they fear for their father's safety if he returns because people continue to threaten him with death for his faith, (3) medical records, and (4) humanitarian reports regarding the conditions in Uzbekistan.

Domlatjanov's medical records indicated that he was treated for anxiety, sleep disorders and headaches due to the physical abuse he suffered in Uzbekistan. The records also showed that he had a "well healed knife wound on his left hand." A separate clinical report from a licensed clinical social worker provided that Domlatjanov had major depressive disorder and posttraumatic stress disorder as a result of the violence he suffered in Uzbekistan.

Human Rights Watch's 1999 report for Uzbekistan provided that the Uzbek government was known to make arbitrary arrests, torture men in custody, and discriminate against certain religions. The 1999 report told of a specific incident where a Baptist pastor was arrested and sentenced to two years of hard labor for organizing unsanctioned gatherings, meetings, and demonstrations.

Human Rights Watch's 2000 report for Uzbekistan gave as an example of

4

religious intolerance in the country an incident where an unregistered Baptist meeting was raided by the police and the participants were detained and tortured. The 2000 report went on to add that torture in Uzbekistan was "routine" and that police misconduct went unpunished.

The 2002 State Department country report for Uzbekistan said that the government continued to restrict religious freedom but that Christians who did not proselytize "generally had no problems." However, according to the report, the Uzbek government continued to require that religious groups register with the government using "strict and burdensome criteria" to approve religious activities. Baptist churches had a hard time registering under the strict criteria. And Baptists who prayed at unregistered churches had meetings broken up by the police, were fined, and sometimes imprisoned. The report also noted that religious literature was highly censored.

The 2003 State Department country report for Uzbekistan also stated that "Christians were generally well tolerated." But the report told of an incident where members of an unregistered Baptist church were arrested and sentenced to prison for ten days and fined for conducting a religious service in a private home.

After hearing Domlatjanov's testimony and reviewing the documentary evidence he submitted, the IJ found that Domlatjanov's testimony regarding the toenail incident was "to a large extent ridiculous" and "not . . . credible or

5

believable." However, the IJ also found Domlatjanov's "testimony to be believable that he was a Baptist." As to the other evidence that Domlatjanov "suffered some additional problems and he was harassed by hooligans," the IJ concluded that Domlatjanov "had not shown, to [his] satisfaction, that he had suffered past persecution of a severe nature which would constitute past persecution." The IJ also concluded that Domlatjanov had not shown that he had a well-founded fear of future persecution if returned to Uzbekistan. Because Domlatjanov and Snitko had not met their burden as to asylum, the IJ concluded that they could not meet the higher standard required for withholding of removal.

Finally, as to the couple's claim for CAT relief, the IJ said that the toenail incident would be sufficient to constitute torture. But, because the IJ found that Domlatjanov's testimony regarding the toenail incident was not credible, Domlatjanov and Snitko had not shown that Domlatjanov was subjected to past torture, or had a well-founded fear of future torture, by the Uzbek government.

The couple appealed the IJ's denial of their asylum, withholding of removal, and CAT relief claims to the Board of Immigration Appeals. Specifically as to their asylum claims, Domlatjanov and Snitko argued that the IJ erred in concluding that Domlatjanov had not suffered past persecution and did not have a well-founded fear of future persecution.

The BIA adopted and affirmed the IJ's decision. The BIA took issue with

6

part of the IJ's justification for finding that Domlatjanov's testimony about the toenail incident was not credible. However, the BIA ultimately "agree[d] with the Immigration Judge that [Domlatjanov]'s vague testimony [was] of limited credibility." The BIA concluded that, of the remaining evidence, Domlatjanov and Snitko did not adequately support their burden of proof as to each of their claims.

Domlatjanov and Snitko now petition this Court for review of the BIA's decision to deny their asylum claims.[1] They argue that the BIA and IJ committed two errors in denying their claims.

## I.

The couple first contends that the IJ's credibility finding regarding the toenail incident, affirmed by the BIA, was not supported by substantial evidence. The government responds that we do not have jurisdiction to review the IJ's credibility finding because Domlatjanov and Snitko failed to exhaust their administrative remedies by challenging the credibility finding in their appeal to the BIA.

The government is correct that "[w]e lack jurisdiction to consider a claim raised in a petition for review unless the petitioner has exhausted his administrative

---

[1] Domlatjanov and Snitko's brief to this Court does not address their claims for CAT relief and addresses only in passing their claims for withholding of removal. They therefore have abandoned here any issues they had with regard to these claims. See Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005).

remedies with respect thereto." Amaya-Artunduaga v. U.S. Att'y Gen., 463 F.3d 1247, 1250 (11th Cir. 2006) (per curiam); accord 8 U.S.C. § 1252(d)(1) ("A court may review a final order of removal only if the alien has exhausted all administrative remedies available to the alien as of right.") That is, we "lack jurisdiction to consider claims that have not been raised before the BIA." Sundar v. Immigration & Naturalization Serv., 328 F.3d 1320, 1323 (11th Cir. 2003). "Thus, if an alien fails to challenge an adverse credibility determination in his appeal to the BIA, we lack jurisdiction to consider such a challenge in his petition for review." Amaya-Artunduaga, 463 F.3d at 1250.

Here, we have reviewed Domlatjanov and Smitko's notice of appeal and brief to the BIA. In neither pleading did the couple raise a challenge to the IJ's credibility finding. Accordingly, they have failed to exhaust their administrative remedies as to the credibility finding on the toenail incident, and we do not have jurisdiction to review the part of their petition that challenges the credibility finding here.

Our exhaustion analysis is not changed by fact that the BIA addressed the credibility finding sua sponte in its order affirming and adopting the IJ's decision. In Amaya-Artunduaga, the BIA, as it did here, considered the IJ's credibility finding even though the issue was not raise by the alien in his appeal to the BIA. Id. We said that "[t]his leaves open the question whether we have jurisdiction over

8

a claim when an alien, without excuse or exception, fails to exhaust that claim, but the BIA nonetheless considers the underlying issue <u>sua sponte</u>." <u>Id.</u> Answering the question in the negative, we held that the "the goals of exhaustion are better served by our declining to review claims a petitioner, without excuse or exception, failed to present before the BIA, even if the BIA addressed the underlying issue <u>sua sponte</u>." <u>Id.</u> at 1251. Thus, we concluded, the exhaustion requirement in 8 U.S.C. § 1252(d)(1) divested us of jurisdiction to review the alien's argument for the first time in this Court, even if raised <u>sua sponte</u> by the BIA. <u>Id.</u>

Likewise, despite the fact that the BIA addressed the IJ's credibility finding in its order affirming and adopting the IJ's decision, we do not have jurisdiction to review Domlatjanov and Snitko's argument raised for the first time here that the IJ's credibility finding was not supported by substantial evidence. We therefore dismiss this part of the couple's petition for review.

## II.

Domlatjanov and Snitko also contend that the IJ and BIA erred in finding that Domlatjanov did not suffer past persecution. This issue was raised before the BIA and we have jurisdiction to review it here. We review the IJ's findings under the substantial evidence test, which means that we "must affirm the IJ's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." <u>Sepulveda</u>, 401 F.3d at 1230. "[T]he IJ's decision can be

reversed only if the evidence 'compels' a reasonable fact finder to find otherwise."

Id.

Here, the evidence does not compel a conclusion that Domlatjanov suffered past persecution. We have said that persecution is an extreme concept that requires more than a few isolated incidents of verbal harassment or intimidation. Silva v. U.S. Att'y Gen., 448 F.3d 1229, 1237–38 (11th Cir. 2006). Mere harassment does not amount to persecution. Id.

Excluding the toenail incident, which we must given the BIA's adverse credibility finding, Domlatjanov has not demonstrated that the harm he suffered in Uzbekistan because of his religion was severe and pervasive enough to constitute persecution. Getting kicked off the national rocket team and being threatened by the police were mere harassment and not persecution. See Sepulveda, 401 F.3d at 1231 ("menacing telephone calls and threats . . . do not rise to the level of past persecution"). Only two of the incidents Domlatjanov described, which took place three years apart, involved any physical violence targeted at him, and they were not severe enough to compel a finding that Domlatjanov was persecuted. Cf. Ruiz v. Gonzales, ___ F.3d ___, 2007 WL 510147, *4 & n.2 (11th Cir. Feb. 20, 2007) (holding that record compelled persecution finding where alien had been threatened, beaten on two occasions and then kidnapped for eighteen days); see also Tawn v. Ashcroft, 363 F.3d 740, 742–43 (8th Cir. 2004) (two beatings four

10

years apart which resulted in swelling did not constitute persecution); <u>Dandan v. Ashcroft</u>, 339 F.3d 567, 573–74 (7th Cir. 2003) (not persecution where alien was detained for three days and beaten which resulted in a swollen face).

Because the record does not compel a finding that Domlatjanov was persecuted in Uzbekistan, he and his wife are not eligible for asylum. <u>See</u> 8 U.S.C. §§ 1158(b)(1)(A) (only refugees entitled to asylum), 1101(a)(42)(A) (refugee defined in part as one who is persecuted on account of his religion). Accordingly, we deny their petition to review the denial of the asylum claim.

PETITION DISMISSED IN PART AND DENIED IN PART.