[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-12991
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 30, 2010
JOHN LEY
CLERK

Agency No. A098-739-973

ANTONIO RAMIREZ-RECINOS,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(December 30, 2010)

Before TJOFLAT, CARNES and MARCUS, Circuit Judges.

PER CURIAM:

Antonio Ramirez-Recinos seeks review of the Board of Immigration Appeals's (BIA) denial of his application for asylum and withholding of removal. Ramirez-Recinos argues that: (1) based on his age when he entered the United States, he established extraordinary circumstances for his untimely asylum application; and (2) his application for withholding of removal should have been granted because he was persecuted in Guatemala. After thorough review, we dismiss the petition in part, and deny it in part.

We may not review a final order of removal unless "the alien has exhausted all administrative remedies available to the alien as of right." 8 U.S.C. § 1252(d)(1). The petitioner must administratively exhaust his arguments by raising them before the BIA. Amaya-Artunduaga v. U.S. Att'y Gen., 463 F.3d 1247, 1250 (11th Cir. 2006). We lack jurisdiction to consider unexhausted arguments, even if the BIA considered those arguments sua sponte. Id.

To apply for asylum, an alien must "demonstrate[] by clear and convincing evidence that the application has been filed within 1 year after the date of the alien's arrival in the United States." Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1286 (11th Cir. 2003) (quoting 8 U.S.C. § 1158(a)(2)(B)). We have "determined that [8 U.S.C. §] 1158(a)(3) divests [us] of jurisdiction to review a decision regarding whether an alien complied with the one-year time limit or established extraordinary

2

circumstances that would excuse his untimely filing." Id. at 1287.

We review the Immigration Judge's (IJ) and the BIA's factual determinations under the highly deferential substantial evidence test and will affirm if the decision "is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Kazemzadeh v. U.S. Att'y Gen., 577 F.3d 1341, 1350-51 (11th Cir. 2009) (quotation omitted). Under the substantial evidence test, we can only reverse a factual finding if the record compels it. Id. at 1351.

To qualify for withholding of removal under the INA, an alien must show that if returned to his country, his "life or freedom would be threatened in that country because of [his] race, religion, nationality, membership in a particular social group, or political opinion." Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1232 (11th Cir. 2005) (quoting 8 U.S.C. § 1231(b)(3)(A)). An alien may make such a showing in one of two ways. Tan v. U.S. Att'y Gen., 446 F.3d 1369, 1375 (11th Cir. 2006). "First, an alien may establish past persecution in [his] country based on a protected ground." Id. (quotation omitted). Such past persecution creates a rebuttable presumption that the alien has a "well-founded fear of future persecution, and the burden then shifts to the [government] to show that the conditions in the country have changed or the alien could avoid a future threat through relocation." Id. (quotation omitted). Second, an alien can show "that it is more likely than not that [he] would be persecuted on

3

account of" a protected ground upon return to his country. Id. (quotation omitted).

We define persecution as "an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation." Sepulveda, 401 F.3d at 1231 (quotations omitted). To illustrate, we rejected a claim of persecution where an alien, in addition to receiving threats, was detained at a police station for 36 hours and was kicked and beaten with a belt, suffering multiple scratches and bruises. Djonda v. U.S. Att'y Gen., 514 F.3d 1168, 1171, 1175 (11th Cir. 2008). On the other hand, we upheld a persecution claim where an alien received numerous death threats, was dragged by her hair out of her car and beaten, had her groundskeeper tortured and killed by attackers looking for her, and was further kidnaped and beaten. De Santamaria v. U.S. Att'y Gen., 525 F.3d 999, 1008-09 (11th Cir. 2008). In evaluating whether harm constitutes persecution, "[w]e may consider a threatening act against another as evidence that the petitioner suffered persecution where that act concomitantly threatens the petitioner." Id. at 1009 n.7.

As an initial matter, we lack jurisdiction to review the denial of Ramirez-Recinos's asylum application. First, Ramirez-Recinos did not raise this issue in his notice of appeal to the BIA or in his brief to the BIA, and he has therefore not exhausted his administrative remedies as to this issue. See Amaya-Artunduaga, 463 F.3d at 1250; 8 U.S.C. § 1252(d)(1). Second, even if Ramirez-Recinos had

4

exhausted his administrative remedies, we lack jurisdiction to review whether an alien timely filed his asylum application or established extraordinary circumstances to excuse an untimely application. See Mendoza, 327 F.3d at 1287. Accordingly, we dismiss the asylum claim in Ramirez-Recinos's petition.

Turning to his withholding of removal claim, the record does not compel reversal of the BIA's final order to deny withholding of removal. Ramirez-Recinos's only harm was a single bruise on his face, which was much less serious than being detained at a police station for 36 hours, being kicked and beaten with a belt, and suffering multiple scratches and bruises, which we have held was not persecution. Djonda, 514 F.3d at 1171, 1175. Although Ramirez-Recinos's mother was kidnapped in his presence, there was no evidence that the kidnapping was intended to target Ramirez-Recinos or that he was personally at risk of being kidnapped.

Furthermore, the evidence established that the country conditions in Guatemala have changed since Ramirez-Recinos was beaten and his mother was kidnapped. The year after Ramirez-Recinos left Guatemala, a peace treaty was signed which prohibited the use of the army to address internal threats. And, Ramirez-Recinos's father returned to Guatemala one month after bringing Ramirez-Recinos and his siblings to the United States, and the father has remained in Guatemala since then with no incident.

Based on this evidence, Ramirez-Recinos has failed to show that he would more likely than not be persecuted if he returned to Guatemala. Accordingly, we deny his petition as to this claim.

**DISMISSED IN PART AND DENIED IN PART.**