[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-12342
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 28, 2012
JOHN LEY
CLERK

Agency No. A095-547-304

RROK GAVOCI,
ANGJE GAVOCI,

                                                          Petitioners,

versus

U.S. ATTORNEY GENERAL,

                                                          Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(March 28, 2012)

Before MARCUS, MARTIN, and FAY, Circuit Judges.

PER CURIAM:

Rrok Gavoci and his wife, Angje Gavoci ("Angje"), both natives and

citizens of Albania, seek review of the Board of Immigration Appeals' ("BIA")

final order affirming the Immigration Judge's ("IJ") denial of their application for

asylum, withholding of removal, and relief under the United Nations Convention

Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment

("CAT"), 8 U.S.C. §§ 1158(a), 1231(b)(3); 8 C.F.R. § 208.16(c).[1]  Gavoci

contends that the BIA erroneously found that his alleged persecution did not occur

on account of political opinion.  He also argues that the BIA erred in finding that

his presumed fear of future persecution was rebutted by fundamentally changed

country conditions in Albania.  For the reasons set forth below, we deny Gavoci's

petition for review in part and dismiss it in part.

I.

Gavoci and Angje entered the United States in 2001 without inspection,

after which Gavoci filed an application for asylum and withholding of removal,

alleging that he was persecuted in Albania in part due to his political opinion.  In

2005, the Department of Homeland Security served them with notices to appear,

charging them as removable pursuant to INA § 212(a)(6)(A)(i), 8 U.S.C.

§ 1182(a)(6)(A)(i), for being present in the United States without having been

admitted or paroled.

---

[1]  Angje is a derivative beneficiary of Rrok Gavoci's asylum application.

At the hearing in the immigration court, Gavoci testified, in relevant part, that he had been a member of the Democratic Party in Albania since 1990, and had participated in several political demonstrations in 1990 and 1991.[2] As part of his work for the Democratic Party, Gavoci would visit different villages and hold meetings in people's houses, persuading them to vote for the party.

On the evening of March 23, 2000, Gavoci was riding a bicycle when he encountered masked men in police uniforms, who called him by his first name, told him to stop, and also called him a "democrat." The men hit Gavoci with a stick or a baseball bat in the back of his neck, causing him to lose consciousness and fall seven or eight meters underneath a bridge. Several passers-by saw what happened and took him to a hospital, where he spent fifteen days. Gavoci believed that the assailants were policemen, given their uniforms, but he also stated that Albania was in chaos at the time and that "pretty much anybody could have just worn a policeman uniform." As a result of the attack, Gavoci suffered long-lasting injuries.

---

[2] Gavoci testified that he was beaten and injured during one such demonstration in 1991, although he could not say by whom. We will not consider this incident in analyzing his claims because he did not refer to it in his appeal before the BIA and only fleetingly mentions it in his brief to this Court. *See Amaya-Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1250-51 (11th Cir. 2006) (holding that this Court lacks jurisdiction to review claims that have not been raised before the BIA); *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) ("When an appellant fails to offer argument on an issue, that issue is abandoned.").

On cross-examination, Gavoci testified that, during a meeting before the attack, he was "arrested" by individuals who had been asking him for $20,000. He stated that "they" had been demanding money from him through anonymous letters since 1992, when his brothers, who were then living in the United States, came to visit. When asked if they demanded money from him in March 2000, Gavoci explained: "Well, they were asking me for money all that time until they beat me. Because they kept telling me like, well, your brothers live in America, so we're asking for this much money and you have to give us money." He also testified that the reason he was attacked was because he could not pay the $20,000.

Gavoci submitted several documents to support his claims, including a statement by Mark Gjon Shllaku, one of the persons who took Gavoci to the hospital after the March 2000 attack. Shllaku stated, in part, that Gavoci "was beaten by some unknown persons as he has been threaten[ed] by an anonymous letter sent to him where someone wrote to him that they wanted [$20,000 from him] or they will eliminate[] him physically." Shllaku did not mention Gavoci's political activity.

The IJ issued an oral decision, denying Gavoci's claims and ordering him and Angje removed from the United States. Gavoci appealed to the BIA, which

affirmed the IJ's decision on the merits and dismissed the appeal. The BIA found, in relevant part, that the threats and attack on Gavoci were not based, even in part, on political opinion or any other protected ground, and that a single reference to Gavoci as a democrat was insufficient to tie the March 2000 attack to a political motivation. The BIA further found that, even if Gavoci had suffered past persecution, country conditions in Albania have fundamentally changed, thereby rebutting any presumed fear of future persecution.

## II.

We review only the BIA's opinion as the final judgment unless the BIA "expressly adopts the immigration judge's reasoning." *Todorovic v. U.S. Att'y Gen.*, 621 F.3d 1318, 1324 (11th Cir. 2010). In this case, the BIA did not expressly adopt the IJ's reasoning on any of the pertinent issues, and, therefore, we review only the BIA's decision. *See id.*

We review the BIA's factual determinations under the highly deferential substantial-evidence test and will affirm if its decision is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1350-51 (11th Cir. 2009) (quotation omitted). Under the substantial-evidence test, we may reverse a finding of fact "only when the record compels a reversal; the mere fact that the record may

5

support a contrary conclusion is not enough to justify a reversal of the administrative findings." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (*en banc*). We review the BIA's legal conclusions *de novo. Kazemzadeh*, 577 F.3d at 1350.

To be eligible for asylum, an alien must establish, with credible evidence, either past persecution or a well-founded fear of future persecution on account of political opinion or other protected ground. *Sepulveda*, 401 F.3d at 1230-31. A showing of past persecution creates a presumption of a well-founded fear of future persecution. *Id.* at 1231. To demonstrate a sufficient nexus between political opinion and alleged persecution, an alien must show that he was persecuted "because of" his political opinion. *Rodriguez Morales v. U.S. Att'y Gen.*, 488 F.3d 884, 890 (11th Cir. 2007). However, political opinion or other protected ground need not be the sole motive for persecution, as long as the alien can show "that the persecution was motivated at least in part by a protected ground." *Sanchez Jimenez v. U.S. Att'y Gen.*, 492 F.3d 1223, 1232-33 (11th Cir. 2007). Generally, a failure to meet the standard for asylum will also preclude the granting of withholding of removal. *See Rodriguez Morales*, 488 F.3d at 891.

In this case, Gavoci failed to establish a sufficient nexus between his persecution and political opinion. He testified at the hearing that the individuals

6

who attacked him in March 2000 called him by his first name, told him to stop, and called him a "democrat." While this testimony may raise an inference that Gavoci was attacked due to his political beliefs, stronger evidence suggests that he was attacked solely due to extortion. He testified that, before the attack, he was "arrested" during a meeting by individuals who had demanded $20,000 from him; that these persons had been asking him for money since 1992 because his brothers lived in the United States; that they kept asking him for money until they beat him; and that he was beaten only after he could not pay the $20,000. Furthermore, the statement from Gavoci's supporting witness, Shllaku, did not mention Gavoci's political activity, but indicated that Gavoci was beaten as a culmination of anonymous extortion threats. Notably, Gavoci's testimony strongly suggests that the extortion threats themselves occurred because his brothers were living in the United States, not because of his political activity.

Thus, despite possible inferences to the contrary, substantial evidence supports the BIA's conclusion that Gavoci's attack was based solely on extortion and was not motivated even in part by political opinion. *See Rodriguez Morales*, 488 F.3d at 891 (affirming the denial of asylum because, while the alien's testimony could have supported an inference that he was persecuted because of his political beliefs, the evidence equally supported an inference that he was

threatened simply because of his refusal to assist the persecutors); *Rivera v. U.S. Att'y Gen.*, 487 F.3d 815, 823 (11th Cir. 2007) ("Although other inferences about the [persecutors'] motives may be drawn, it is not our task to do so as long as substantial evidence supports the [agency's] conclusion." (quotation omitted)).

Because Gavoci failed to establish past persecution on account of a protected ground, no presumption of future persecution arose, rendering him unable to qualify for asylum or withholding of removal. *See Sepulveda*, 401 F.3d at 1231; *Rodriguez Morales*, 488 F.3d at 891. Consequently, we need not address the second issue raised by Gavoci, namely, whether the government has rebutted the presumption of future persecution by a showing of changed country conditions.[3]

In light of the foregoing, we deny Gavoci's petition for review in part and dismiss in part.

**PETITION DENIED IN PART AND DISMISSED IN PART.**

---

[3] We acknowledge that, even absent a showing of past persecution, an alien may still prevail on an asylum claim by showing a well-founded fear of future persecution. *Kazemzadeh*, 577 F.3d at 1352. However, Gavoci never argued before the BIA that he has established such an independent well-founded fear, and he does not raise this claim in his brief to this Court, thereby precluding our review of the issue. *See Amaya-Artunduaga*, 463 F.3d at 1250-51; *Sepulveda*, 401 F.3d at 1228 n.2. We also note that Gavoci has abandoned his claim for CAT protection, as his brief does not contain any arguments in this regard. *See Sepulveda*, 401 F.3d at 1228 n.2.