[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-10779
Non-Argument Calendar

_____

Agency No. A095-896-571

OLEG IVANOVICH ILYUKHIN,
INNA ALEKSANDROVNA ILYUKHIN,
VYACHESLAV OLEGOVICH ILYUKHIN,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(September 5, 2012)

Before HULL, MARTIN and KRAVITCH, Circuit Judges.

PER CURIAM:

Oleg Ivanovich Ilyukhin, along with derivative petitioners Inna Aleksandrovna Ilyukhin and Vyacheslav Ilyukhin, seek review of the Board of Immigration Appeals's (BIA's) final order dismissing their appeal of the Immigration Judge's (IJ's) denial of withholding of removal.  After review, we deny the Ilyukhins' petition.

I.

Oleg and Inna Ilyukhin, natives and citizens of Russia, entered the United States in February 1999 and their son, Vyacheslav, entered in July 2001.  All three overstayed their visas.  In June 2002, Oleg filed an application on behalf of himself and his family seeking asylum, withholding of removal, and relief under the United Nations Convention Against Torture (CAT).  In the application, Oleg contended that his family suffered persecution in Russia based on their membership in a particular social group.

At a hearing before an IJ in 2006, the Ilyukhins conceded removability and withdrew their application for asylum.  At a second hearing in 2010, Oleg Ilyukhin testified about his reasons for leaving Russia.  According to Oleg, he and his brother started a business in 1989 that became successful.  In 1990, he began receiving menacing phone calls from "people who wanted to enrich themselves on our account."  Oleg testified that these people were likely government workers

2

because of their knowledge of the business's success. Oleg explained that, in 1992, his brother was beaten and killed at the business site. That same year, Oleg's cousin and business partner was found dead in his home.

Oleg testified that he left the business at that time but started a new business in 1996. According to Oleg, "the intimidation started again" when his new business became successful. Oleg testified that, in 1997, four men beat him and his business partner at their office and demanded that they pay money. Oleg testified that he paid the money, but that he soon faced increased demands for payment and, in 1998, was again attacked. Although Oleg testified that this beating resulted in broken ribs, Inna testified only that he sustained a cut to his eyebrow.

Oleg stated that, when he refused to pay any more bribes, he and Inna left Russia. He testified that people attempted to burn his house after he moved. And he testified that, in 2005, his daughter was raped in Russia by men who said, "say hello to your father." He testified that his mother, who remained in Russia, told him people called her regularly asking about his whereabouts.

Oleg contended that these events amounted to persecution on account of his membership in a particular social group, that is, "entrepreneurs and businessmen of Russia" who "refuse to give in to government's demands for bribes." He also

3

contended for the first time during the hearing that he was persecuted based on his "imputed political opinion," although he did not describe the nature of this opinion.

The IJ denied the Ilyukhins relief. The IJ first found that Oleg's testimony regarding the 1997 and 1998 beatings was not credible because it did not clearly establish whether Oleg was actually attacked, the extent of his injuries, or the identity of his attackers. The IJ also found no evidence that Oleg's home in Russia was actually burned. The IJ further found that the family presented no evidence that they shared a political opinion that caused the threats and attacks. And the IJ concluded that Oleg's status as a businessman who refused to yield to demands for bribes lacked the particularity, permanence, and visibility to constitute a "particular social group." Instead, the IJ concluded, any adversity the Ilyukhins faced was due to their economic situation and their ability to pay bribes.

Lastly, the IJ found that the Ilyukhins did not establish that they faced persecution if they returned to Russia. Specifically, Oleg's testimony regarding his daughter's rape and the attempted burning of his home failed to tie the incidents to the Ilyukhins' political opinions or membership in a particular social group.

The Ilyukhins appealed to the BIA, which affirmed the IJ's adverse

4

credibility finding based on inconsistencies in the Ilyukhins' testimony.[1]  And the

BIA affirmed the IJ's finding that the Ilyukhins failed to establish a nexus between

the alleged persecution and a statutorily protected ground, holding that the

adversity the Ilyukhins faced was due only to their perceived wealth and ability to

pay bribes.  The Ilyukhins now seek review of the BIA's denial of withholding-of-

removal relief.

## II.

When the BIA issues a decision, we review only that decision, except to the

extent that the BIA expressly adopts the IJ's decision.  *Al Najjar v. Ashcroft*, 257

F.3d 1262, 1284 (11th Cir. 2001).  Here, the BIA did not expressly adopt the IJ's

decision.  We review the BIA's legal determinations *de novo*, and review

"administrative fact findings under the highly deferential substantial evidence

test."  *Rivera v. U.S. Att'y Gen.,* 487 F.3d 815, 820 (11th Cir. 2007) (internal

quotation marks omitted).  We must affirm the BIA's decision if it is "supported

by reasonable, substantial, and probative evidence on the record considered as a

---

[1] The Ilyukhins did not appeal the IJ's denial of relief under the CAT, and they again fail to challenge the decision in their brief to this court.  As a result, the challenge is unexhausted and, in any event, waived. *Amaya-Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1250 (11th Cir. 2006).  And, although the Ilyukhins appealed the IJ's denial of withholding-of-removal relief based on imputed political opinion, they do not challenge the BIA's subsequent decision that affirmed the IJ's denial of relief on that ground.  They have therefore also waived a challenge to this finding. *Id.*

whole." *Silva v. U.S. Att'y Gen.,* 448 F.3d 1229, 1236 (11th Cir. 2006) (internal quotation marks omitted). To reverse a factual finding by the BIA, we must find that "the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (*en banc*).

## III.

To quality for withholding of removal, an alien must show that his or her life or freedom would be threatened on account of her race, religion, nationality, membership in a particular social group, or political opinion. *Sanchez v. U.S. Att'y Gen.,* 392 F.3d 434, 437 (11th Cir. 2004). When seeking withholding of removal, an "alien bears the burden of demonstrating that he more-likely-than-not would be persecuted or tortured upon his return to the country in question." *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1347, 1353 (11th Cir. 2009) (internal quotation marks omitted). Persecution is an "extreme concept" requiring more than a few isolated incidents of verbal intimidation and minor physical abuse. *Id.*

We conclude, even assuming that the Ilyukhins' testimony about the attacks was credible, that the testimony does not establish that the family suffered persecution on account of their membership in a particular social group. A "particular social group" refers to persons who share a common, immutable

6

characteristic "that the members of the group either cannot change, or should not be required to change because it is fundamental to their individual identities or consciences." *Castillo-Arias v. U.S. Att'y Gen.*, 446 F.3d 1190, 1193 (11th Cir. 2006) (internal quotation marks omitted). And "evidence that either is consistent with acts of private violence . . . or that merely shows that a person has been the victim of criminal activity, does not constitute evidence of persecution based on a statutorily protected ground." *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1258 (11th Cir. 2006).

Here, Oleg repeatedly testified that the attacks he suffered were based on his economic situation and his ability to pay bribes. Oleg's wealth and perceived ability to pay bribes is not the sort of attribute that is fundamental to a person's individual identity sufficient to comprise a particular social group. *See Castillo-Arias*, 446 F.3d at 1193. Further, Oleg never identified his attackers. His bare assertions that his attackers were government agents are insufficient to show that he experienced anything other than "acts of private violence." *Ruiz*, 440 F.3d at 1258. Thus, the Ilyukhins failed to establish a nexus between the events that occurred and a statutorily protected ground for withholding of removal.

Similarly, the Ilyukins did not establish a nexus between the events that occurred after they left Russia and a fear of future persecution should they return.

7

Taking the Ilyukhins' testimony as true, there is still no evidence tying Oleg's daughter's rape or the attempted burning of the Ilyukhins' home to any statutorily protected ground.  The Ilyukhins never identified the perpetrators of or the motives for these events.  On these facts, the record does not compel reversal of the BIA's order affirming the denial of withholding of removal.

**PETITION DENIED.**