[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-11631
Non-Argument Calendar

_____

Agency No. A206-622-169

BRENDY ASCENCIO-CORADO,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(December 27, 2019)

Before MARTIN, ROSENBAUM, and GRANT, Circuit Judges.

PER CURIAM:

Brendy Ascencio-Corado, a citizen of Guatemala, seeks review of the Board of Immigration Appeals' ("BIA") order affirming the Immigration Judge's ("IJ") denial of her application for asylum, withholding of removal, and Convention Against Torture ("CAT") protection.  Ascencio-Corado argues that the BIA erred when it retroactively applied Matter of A-B-, 27 I. & N. Dec. 316 (A.G. 2018), because agency rules should apply only prospectively given their close tie to legislation.

## I.

### A.    FACTUAL BACKGROUND

Ascencio-Corado is a native and citizen of Guatemala, born July 16, 1982, in Jalpatagua, Guatemala.  In 2010, she met her husband, Josue Gilberto Pacheco Lopez.  They dated for three years before she and her two children from a previous relationship moved in with Pacheco Lopez in July of 2013.  One month later, Pacheco Lopez began to abuse her and control her life.  He dictated how Ascencio-Corado could dress and whether she could wear makeup at her job.  He physically and verbally abused her in both private and public.  For example, Pacheco Lopez (1) once hit Ascencio-Corado in the face with an umbrella at a bus stop; (2) put her in a headlock upon picking her up from work; and (3) hit her in front of his mother and grandfather.  In private, Pacheco Lopez would rape her daily, and if she attempted to refuse him, he would hit her and she believed he would kill her.

2

During this time, Ascencio-Corado continued to work, even though Pacheco Lopez did not want her to. However, she eventually quit her job because Pacheco Lopez continuously pursued her while she was at work and would abuse her physically when he came to her workplace. Ascencio-Corado also sent her children to live with another family member because she did not want them to see Pacheco Lopez abuse her.

After five or six months of living together, Pacheco Lopez confessed to Ascencio-Corado that he was a "gang member" and "a murderer." He admitted that he had killed his former girlfriend because of her affiliation with another gang, and, when a potential gang member refused to join, Pacheco Lopez threw him down a ravine. Around the time of this confession, Ascencio-Corado tried to leave Pacheco Lopez for the first of many times. She was largely unsuccessful because each time she voiced her intention to leave, he would threaten to kill her and her children. Ascencio-Corado was also afraid of Pacheco Lopez's connections, through his gang, to the police.

She tried to leave him five times in total. The first time, in November 2013, she told Pacheco Lopez she could not take it anymore because he was going to kill her. He responded by saying she did not know who she was messing with. Ascencio-Corado did not physically leave the house that first time because she was scared. The other four times she tried to leave him, she told him—when he was

3

calm—that it was best if they separated, but he replied with verbal threats. She finally separated from him on January 5, 2015, because she "made a decision either to live or to die." While Ascencio-Corado was waiting at a bus stop, Pacheco Lopez arrived—very drunk—grabbed her by the head, and beat her. While he was beating her, a motorcycle drove by. The biker saw what was happening, stopped, and told Pacheco Lopez to stop or he would call the police. Pacheco Lopez released Ascencio-Corado and she left, bleeding. She then went to a friend's house to live for about a month.

However, Pacheco Lopez found her at the friend's house, forced her to let him inside, and beat her. She left and relocated eight hours away to her mother's home. Pacheco Lopez searched for Ascencio-Corado, but never found her at this location. She never reported the abuse she suffered to the Guatemalan police because, if she had, Pacheco Lopez would "immediately" find out.

Ascencio-Corado then left for the United States, where she entered near Hidalgo, Texas, around February 28, 2014, and was detained by the Department of Homeland Security ("DHS"). Pacheco Lopez does not know Ascencio-Corado is in the United States, and she fears returning to Guatemala because she believes he will kill her.

B.    PROCEDURAL HISTORY

DHS commenced removal proceedings on March 21, 2014, when it served Ascencio-Corado with a Notice to Appear ("NTA"), charging her as removable from the United States for being present without having been admitted or paroled. Ascencio-Corado appeared pro se before the San Antonio Immigration Court on May 12, 2014, and admitted the factual allegations in the NTA. She timely filed her Form I-589 Application for Asylum under Section 208 of the Immigration and Nationality Act ("INA"), and timely filed her applications for withholding of removal and CAT protection.

On December 11, 2017, the IJ issued a decision denying her application for asylum, withholding of removal and relief under the CAT, and ordered her removed to Guatemala. In explaining its decision, the IJ found that Ascencio-Corado was not credible. The IJ also found that her proposed "particular social group" ("PSG") of "women of Guatemala who are unable to leave their relationship" was a cognizable PSG, but the IJ held that she did not establish her membership within that PSG nor that her fear of future harm was caused by her membership within the PSG. The IJ also held that her fear of returning to Guatemala was not objectively reasonable.

On December 26, 2017, Ascencio-Corado timely appealed the IJ's decision to the BIA. The BIA issued a decision on March 13, 2019, affirming the IJ's

determination that Ascencio-Corado did not meet her burden of proof to qualify for asylum.  Applying Matter of A-B-, 27 I. & N. Dec. 316 (A.G. 2018), the BIA reversed the IJ's determination that Ascencio-Corado's PSG was cognizable.  It then upheld the IJ's decision that Ascencio-Corado did not prove her fear of future harm was caused by her membership in the PSG she proposed.  Finally, the BIA declined to terminate Ascencio-Corado's proceedings based on her argument that the NTA issued in her case did not list the time and place of her initial removal hearing.

Ascencio-Corado timely appealed the BIA's determination to this Court. See INA § 242(b)(1), 8 U.S.C. § 1252(b)(1).

## II.

Ascencio-Corado's only argument on appeal is that the BIA erred in retroactively applying Matter of A-B- to her appeal to hold that her proposed PSG of "women of Guatemala who are unable to leave their relationship" was not cognizable.[1]  She requests that her petition be remanded to the BIA for further consideration "without the impermissible retroactive reliance on Matter of A-B-." The Government argues that Ascencio-Corado waived this argument by failing to

---

[1] We need not address the government's argument that we do not have jurisdiction to review the denial of Ascencio-Corado's application for CAT protection because she has not raised this issue.  See Sapuppo v. Allstate Floridian Ins. Co., 739 F.3d 678, 682 (11th Cir. 2014) ("Abandonment of an issue can also occur when passing references appear . . . [as] mere 'background' to the appellant's main arguments.").

argue that <u>Matter of A-B-</u> should not be applied retroactively before the BIA, and, in the alternative, that the BIA properly applied <u>Matter of A-B-</u> because it did not announce a new agency rule and simply reiterated BIA precedent.

Before addressing Ascencio-Corado's arguments on the merits, we must review our subject matter jurisdiction <u>de novo</u>. <u>Indrawati v. U.S. Att'y Gen.</u>, 779 F.3d 1284, 1297 (11th Cir. 2015). We conclude that we need not address whether the BIA properly applied <u>Matter of A-B-</u> retroactively because we lack jurisdiction to hear Ascencio-Corado's claim. We lack jurisdiction to consider a claim raised in a petition for review unless the petitioner has exhausted her administrative remedies. <u>See</u> 8 U.S.C. § 1252(d)(1). In other words, we "lack jurisdiction to consider claims that have not been raised before the BIA." <u>Sundar v. INS</u>, 328 F.3d 1320, 1323 (11th Cir. 2003).

<u>Matter of A-B-</u> was issued approximately two months before Ascencio-Corado submitted her brief appealing the IJ's decision to the BIA. In that brief, Ascencio-Corado argued that "her proposed group is still cognizable, even after the ghastly decision rendered by the Attorney General in <u>Matter of A-B-</u>, 27 I&N Dec. 316 (A.G. 2018)." She failed to address whether <u>Matter of A-B-</u> applied retroactively, therefore depriving the BIA of the opportunity to fully consider her claims. <u>See</u> <u>Amaya-Artunduaga v. U.S. Att'y Gen.</u>, 463 F.3d 1247, 1250–51 (11th Cir. 2006) (per curiam).

7

We have previously rejected a failure-to-exhaust argument when the underlying claim is based on the text of the BIA's decision, but Ascencio-Corado's claim is different from the "reasoned consideration" claims we addressed in Indrawati.  See 779 F.3d at 1299.  There, we held it was "facially nonsensical" to fault the petitioner for not raising an argument about the lack of reasoned consideration displayed by a decision that was not yet in existence.  Id.  As described above, Ascencio-Corado's decision to handle Matter of A-B- by arguing her PSG was still cognizable "does not constitute grounds for reversal or remand that arose only after the issuance of the BIA's decision."  See Munguia-Mejia v. U.S. Att'y Gen., 781 F. App'x 857, 860 (11th Cir. 2019) (unpublished) (per curiam).  Rather, she chose to make one argument regarding Matter of A-B- and chose to forego the argument she raises now.  This means the BIA did not have an opportunity to fully consider the "core issue now on appeal," and we do not have jurisdiction to hear her claim.  Indrawati, 779 F.3d at 1297; cf. Guzman-Garcia v. U.S. Att'y Gen., 760 F. App'x 896, 898 (11th Cir. 2019) (unpublished) (per curiam) (holding petitioner did not satisfy "core issue" exhaustion requirement when he generally raised an issue before the BIA but "failed to exhaust the more specific argument" he raised before this Court).  Accordingly, we must deny Ascencio-Corado's petition for review.

**PETITION DENIED.**

8