[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-10267

Non-Argument Calendar

_____

BLANCA MARISOL MONCADA,
BEATRIZ MARISOL CASTRO-MONCADA,

Petitioners,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A208-778-595

_____

Before JILL PRYOR, LUCK, and LAGOA, Circuit Judges.

PER CURIAM:

Blanca Marisol Moncada and her daughter seek review of the Board of Immigration Appeals' ("BIA") final order affirming the Immigration Judge's ("IJ") denial of Moncada's application for asylum, withholding of removal, and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"). After careful review, we dismiss in part and deny in part the petition.

## I.

Moncada and her daughter Beatriz, both natives and citizens of Honduras, were given notices to appear charging them as removable as noncitizens present in the United States without being admitted or paroled. Both conceded removability; Moncada applied for asylum, withholding of removal, and CAT relief. Moncada alleged that she suffered past persecution and had a well-founded fear of future persecution based on membership in a particular social group, "[m]others of females that are of child-bearing age claimed by men in transnational criminal organizations." AR at 202.[1] Beatriz is a derivative beneficiary of Moncada's claims; she did not file her own application for relief.

---

[1] "AR" is the administrative record.

In her application and at a hearing before an IJ, Moncada asserted that a man named Eduardo, a member of the MS-13 gang, began pursuing a relationship with Beatriz. Moncada understood Eduardo to be dangerous and someone who would not take no for an answer. Eduardo once showed Moncada's son, Fernando, tattoos that he said represented families or women that he had killed because they refused his advances. And gang members who extracted monthly bribes from Moncada's business told her they were not going to request a monthly bribe; rather, they said, "We want your daughter." *Id.* at 140.

Eduardo communicated his desires to Beatriz through a woman named Maria Jose Montalvan. Montalvan made repeated harassing phone calls to Beatriz. Montalvan also came to Moncada's home one day and told her that she knew where Moncada's bank was, where her children went to school, that her husband was living in Miami, and what days the family went to church. Later that night, Montalvan and Eduardo came to Moncada's house; they screamed obscenities and Beatriz's name while throwing beer bottles at the family's front door. The two assailants threatened to burn down the house if Beatriz did not come out of the home and leave with them. Moncada and Beatriz fled the next day. Moncada believed Eduardo would carry out his threats because she was raped when she was young, her attacker continued to threaten her, and he nonetheless later became a police officer.

The IJ denied her claims for asylum, withholding of removal, and CAT relief. The IJ concluded that Moncada was credible but found that she had failed to meet her burden to establish that she had been the victim of past persecution or that she had a well-founded fear of future persecution in Honduras. The IJ explained that Moncada had never been physically harmed in connection with the reason she and her daughter left Honduras for the United States, and the threats she received were insufficient to constitute persecution. Further, the IJ found, even if the threats had constituted persecution, Moncada had not shown that the threats were made on account of a protected ground. Moncada's proposed particular social group, "mothers of females that are of child-bearing age claimed by men in transnational criminal organizations," was not a valid social group, and she was not necessarily targeted because of her membership in that group. The IJ considered that Moncada's proposed social group may be better described as a "family kinship"— a different protected ground—but concluded that even so, she had not been threatened because she was her daughter's mother but because she may have resisted Eduardo's attempts to seize her daughter.

The IJ also found that Moncada had failed to establish that Honduran authorities would be unwilling or unable to protect her, especially considering that she had not reported any of the incidents despite having filed police reports for past assaults. And, the IJ found, Moncada had failed to show that she could not safely relocate to another part of Honduras.

Having concluded that Moncada failed to show past persecution, for most of the same reasons the IJ further found that she had failed to establish a well-founded fear of future persecution on account of a protected ground. And given that she had not met the standards for asylum, the IJ explained that Moncada had failed to demonstrate eligibility for withholding of removal, which sets a higher standard of proof. Finally, the IJ concluded that Moncada was ineligible for CAT relief because she had failed to establish that it was more likely than not that she would be tortured with the consent or acquiescence of Honduran authorities upon her return to her home country.

Moncada appealed to the BIA, specifically challenging the IJ's determinations as to past and future persecution. She argued that she had suffered from past persecution despite not having been physically injured. She explained that she feared Eduardo would kill her and her daughter and knew he had the power to hurt them. She argued that her fear for her daughter's life satisfied her burden. And, she argued, her fear was reasonable.

The BIA affirmed the IJ's decision. The BIA "affirm[ed] the [IJ's] conclusion that [Moncada] did not establish that any past harm she suffered and that she fears she will suffer in the future was or will be on account of her membership in a valid particular social group, family or kinship ties, or any other ground protected by" the Immigration and Nationality Act. *Id.* at 3. The BIA continued, "[b]ecause [Moncada's] claims are fatally flawed on this ground, it is unnecessary to consider the other aspects of the [IJ's] decision."

*Id.* at 4. The BIA further determined that Moncada had not established that, if returned to Honduras, it was more likely than not that she would experience torture with the consent or acquiescence of the Honduran government.

Moncada petitioned this Court for review.

## II.

We review only the BIA's decision, except to the extent that it expressly adopts the IJ's decision. *Perez-Zenteno v. U.S. Att'y Gen.*, 913 F.3d 1301, 1306 (11th Cir. 2019). Findings by the IJ that the BIA did not reach are not properly before us. *Lopez v. U.S. Att'y Gen.*, 504 F.3d 1341, 1344 (11th Cir. 2007).

We review our subject matter jurisdiction *de novo*. *Amaya-Artunduaga v. U.S. Atty. Gen.*, 463 F.3d 1247, 1250 (11th Cir. 2006). We lack jurisdiction to consider a claim raised in a petition for review unless the petitioner has exhausted her administrative remedies by presenting that claim to the BIA. *Indrawati v. U.S. Att'y Gen.*, 779 F.3d 1284, 1297 (11th Cir. 2015); *see* 8 U.S.C. § 1252(d)(1) (providing that this Court "may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right"). We lack jurisdiction to review an unexhausted issue, even if the BIA considers the issue *sua sponte*. *Amaya-Artunduaga*, 463 F.3d at 1250. To exhaust an issue, a petitioner need not "use precise legal terminology" or proffer a well-developed argument, but the petitioner must "provide information

sufficient to enable the BIA to review and correct any errors" allegedly made by the IJ. *Indrawati*, 779 F.3d at 1297–98.

### III.

In her petition for review, Moncada argues that the BIA erred in finding that she had not asserted membership in a cognizable particular social group. She argues that the BIA erred in concluding she was not entitled to CAT relief because she had not met her burden to show that it was more likely than not that she would be tortured with consent or acquiescence of the Honduran government. And she argues that the IJ erred in finding that: she was not being targeted because she is Beatriz's mother; she had not shown past persecution because Eduardo and Montalvan had not acted on their threats; her failure to report the incidents to authorities defeated her argument that Honduran authorities would be unwilling or unable to protect her; and she failed to show she could not safely relocate within Honduras.

We lack jurisdiction to consider Moncada's challenges to the BIA's order. Moncada did not argue before the BIA either that the harm she suffered or feared would be on account of her membership in her asserted social group, or that it was more likely than not that she would be tortured with the consent or acquiescence of the Honduran government. Thus, she failed to exhaust her administrative remedies as to these issues. *Indrawati*, 779 F.3d at 1297–98. The fact that the BIA *sua sponte* addressed the issues Moncada now raises does not permit us to reach them. *Amaya-Artunduaga*, 463

8                    Opinion of the Court                    21-10267

F.3d at 1250. We therefore dismiss in part Moncada's petition for review.

Moncada challenges several of the IJ's findings, but the BIA expressly declined to adopt those findings, so they "do[] not form any part of the order currently under review." *Lopez*, 504 F.3d at 1344. Because we are not permitted to review these findings that the BIA did not adopt, *see id.*, we deny in part the petition for review.

**PETITION DISMISSED IN PART, DENIED IN PART.**