[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 11, 2012
JOHN LEY
CLERK

No. 11-11380
Non-Argument Calendar
_____

Agency No. A098-869-240

OLGA LUCIA MARIN-MEJIA,
LUIS IGNACIO VILLEGAS-HINCAPIE,
CAMILO VILLEGAS-MARIN,

                                                            Petitioners,

versus

U.S. ATTORNEY GENERAL,

                                                            Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(April 11, 2012)

Before BARKETT, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

Lead petitioner Olga Lucia Marin-Mejia, her husband, and their adult son,

all natives and citizens of Colombia, seek review of the Board of Immigration Appeals's ("BIA") final order affirming the Immigration Judge's ("IJ") denial of their application for asylum and withholding of removal under the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1158(a), 1231(b)(3).[1] The petitioners challenge the agency's adverse credibility determination and its conclusion that Marin-Mejia failed to demonstrate a well-founded fear of future persecution on account of her political opinion.[2]

Where the BIA issues its own decision, we ordinarily review only that decision, except insofar as the BIA expressly adopts the IJ's opinion. Tang v. U.S. Att'y Gen., 578 F.3d 1270, 1275 (11th Cir. 2009). Nonetheless, if the BIA implicitly relies upon the IJ's decision and reasoning, we also review the IJ's decision to the extent that the BIA relied upon it. See id. Here, because the BIA agreed with the IJ's findings and relied upon aspects of the IJ's reasoning, we review both decisions.

A factual determination that an alien is statutorily ineligible for asylum or

---

[1] The IJ also denied the petitioners' request for relief under the United Nations Convention Against Torture. The petitioners did not contest that determination before the BIA. That issue is therefore not before us. See Amaya-Artunduaga v. U.S. Att'y Gen., 463 F.3d 1247, 1250 (11th Cir. 2006) (holding that this Court does not have jurisdiction to review claims that have not been exhausted before the BIA).

[2] The petitioners have conceded that Marin-Mejia did not demonstrate past persecution.

withholding of removal is reviewed under the substantial evidence test, which requires that we affirm the BIA's decision if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Al Najjar v. Ashcroft, 257 F.3d 1262, 1283–84 (11th Cir. 2001) (quotation marks omitted). Credibility determinations are likewise reviewed under the substantial evidence test. Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1286 (11th Cir. 2005). Under this "highly deferential" standard of review, we examine the record in the light most favorable to the agency's decision and draw all reasonable inferences in favor of it. Id. We may reverse "only when the record compels [it]; the mere fact that the record may support a contrary conclusion is not enough." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc).

An applicant bears the burden of showing, with specific and credible evidence, a well-founded fear of future persecution on account of her political opinion. See Forgue, 401 F.3d at 1286–87. To obtain asylum, the applicant must show that "there is a reasonable possibility" of such persecution. Mehmeti v. U.S. Att'y Gen., 572 F.3d 1196, 1200 (11th Cir. 2009) (quotation marks and emphasis omitted). To qualify for withholding of removal, an alien must meet the higher threshold of showing that it is "more likely than not she will be persecuted." Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1232 (11th Cir. 2005) (quotation

marks omitted). If an applicant is unable to meet the standard for asylum, she necessarily fails to establish eligibility for withholding of removal. See Forgue, 401 F.3d at 1288 n.4.

An adverse credibility determination may be sufficient to support the denial of asylum or withholding of removal. Kueviakoe v. U.S. Att'y Gen., 567 F.3d 1301, 1304–05 (11th Cir. 2009). "Indications of reliable testimony include consistency on direct examination, consistency with the written application, and the absence of embellishments." Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1255 (11th Cir. 2006). An adverse credibility determination may be rendered "without regard to whether [the] inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim." 8 U.S.C. § 1158(b)(1)(B)(iii). If an explicit adverse credibility determination is made, the burden shifts to the alien "to show that the credibility decision was not supported by specific, cogent reasons or was not based on substantial evidence." Kueviakoe, 567 F.3d at 1305 (quotation marks omitted).

Marin-Mejia argues that the IJ's adverse credibility determination must be set aside. Applying the "highly deferential" standard of review, Forgue, 401 F.3d at 1286, we cannot say the record "compels" a favorable credibility determination. Adefemi, 386 F.3d at 1027. The record reveals a number of inconsistencies between Marin-Mejia's testimony at her hearing and her written application. For

4

instance, Marin-Mejia testified that, on May 11, 2005, she received a phone call from members of FARC who told her to stop working as part of the health brigade of the Liberal Party. However, in her written application, filed on August 30, 2005, Marin-Mejia stated that the callers only asked her to provide services for FARC.

At her hearing, Marin-Mejia also testified that, on May 14, 2005, while her husband was driving her home, they were followed and eventually rear-ended by an orange Renault. Marin-Mejia testified that the occupants of that vehicle identified themselves as members of FARC and shouted obscenities. Her husband then accelerated the car and overtook a bus, before safely reaching their home. In her written application, however, Marin-Mejia did not mention that her car was rear-ended or that the occupants of the other car identified themselves as members of FARC or shouted obscenities. When asked on cross-examination why these details were not in her written statement, Marin-Mejia simply stated that she could not provide every detail in that document.

Given that the May 14, 2005 incident represents the most serious allegation of a threat by FARC, we cannot say that these inconsistencies were insubstantial. And given that the IJ was in a position to observe "the demeanor, candor, [and] responsiveness of the applicant," 8 U.S.C. § 1158(b)(1)(B)(iii), we also cannot

say, on this record, that the IJ erred in refusing to credit Marin-Mejia's explanation for the discrepancies between her testimony and her written application. In sum, although the record may support a favorable credibility determination, it does not compel it. See Adefemi, 386 F.3d at 1027.

We now turn to the evidence unaffected by the adverse credibility determination. See Fogue, 401 F.3d at 1287 (noting that "an adverse credibility determination does not alleviate the IJ's duty to consider [the] other evidence"). Viewing that evidence in the light most favorable to the agency decision, we cannot say that it "compels" the finding of a well-founded fear of future persecution on account of political opinion. Adefemi, 386 F.3d at 1027. Although Marin-Mejia testified that she was contacted by FARC several times from April 2004 to May 2005, the record indicates that FARC sought her out because it wanted her to provide medical services for it. Under binding precedent, Marin-Mejia's refusal to do so, standing alone, is not enough to show that she was targeted because of her political opinion. See Rodriguez Morales v. U.S. Att'y Gen., 488 F.3d 884, 890–91 (11th Cir. 2007); Sanchez v. U.S. Att'y Gen., 392 F.3d 434, 438 (11th Cir. 2004).

During the hearing, Marin-Mejia also pointed to a letter she received on May 15, 2005, which she characterized as representing a threat against her for her

"social, political work." The thrust of the letter, however, simply expresses disagreement with Marin-Mejia's refusal to provide services to FARC. While it also warns her to stop working for the health brigade, Marin-Mejia did not testify that she intends to re-enter the brigade or otherwise promote its work upon returning to Colombia. Finally, Marin-Mejia testified that her mother, who is in Colombia, has received phone calls asking whether she is back in the country. That testimony is corroborated by a declaration from Marin-Mejia's mother. However, at the hearing, Marin-Mejia conceded that the individuals who called her mother did not identify themselves as members of FARC.

At this juncture, we are not free to re-weigh the evidence. Forgue, 401 F.3d at 1286. Rather, we must examine the record in the light most favorable to the agency decision and draw all reasonable inferences in favor of it. Id. Doing so, we cannot say that the record "compels" the finding that Marin-Mejia has a well-founded fear of future persecution on account of her political opinion. Adefemi, 386 F.3d at 1027. The petition for review must therefore be denied.

**PETITION DENIED.**