[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-10095
Non-Argument Calendar
_____

Agency No. A088-246-755


OMAIRA MORA DE LOBO,
LUIS ALFONSO LOBO QUINTERO,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(February 13, 2015)

Before MARCUS, WILLIAM PRYOR, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Petitioners Omaira Mora De Lobo ("Mora"), a native and citizen of

Venezuela, and her husband Luis Alfonso Lobo Quintero ("Lobo") [1] (collectively "Petitioners"), proceeding *pro se*, seek review of the Board of Immigration Appeals's ("BIA") order, affirming the Immigration Judge's ("IJ") denial of asylum based on a finding of no past persecution and no well-founded fear of future persecution. After review, we deny the petition for review.

## I.  Factual Background

In January 2007, while in the United States on a visitor's visa, Mora applied for asylum, withholding of removal, and relief under the United Nations Convention Against Torture ("CAT"), listing Lobo as a derivative beneficiary. The Department of Homeland Security subsequently issued Petitioners' notices to appear, charging them with removability pursuant to Immigration and Nationality Act ("INA") § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B), for having remained in the United States for a time longer than permitted.

The IJ conducted a merits hearing on Mora's asylum application at which she and one of her sons testified. According to the credible hearing testimony, Petitioners were active members of the anti-Chavez Democratic Action Party. In July 2003, people whom Petitioners think may have been "Chavistas"[2] broke into Petitioners' home, damaging the roof, refrigerator, kitchen, and living room

---

[1] Lobo is a citizen of Venezuela and a native of Colombia.

[2] The term "Chavista" indicates a person supportive of the Chavez regime in Venezuela.

2

furniture; defacing family pictures; and writing graffiti on the kitchen wall. Petitioners then began receiving threatening phone calls.

In September 2003, Petitioners' son Frank, a priest and a chaplain with the Venezuelan military, was riding in a helicopter with several high-ranking military personnel when it crashed. Mora and Frank both testified that they believed that the crash was the result of sabotage targeting Frank and the other military officials for their anti-Chavez beliefs. The official government report following the crash concluded that it was an accident. Later that month, Petitioners' home was broken into a second time and the intruders took dishes, emptied drawers, and again wrote graffiti on the walls.

In January 2004, as he was leaving their home, Petitioners' son William was assaulted by people Petitioners believed to be Chavistas. The Chavistas hit William really hard, but ran off when the neighbors came outside. William did not go to the hospital for medical treatment, but his bruises and hematomas were treated at home. Petitioners continued to receive harassing phone calls and people they believed to be Chavistas often drove motorcycles by Petitioners' home at night.

In October 2004, Petitioners opened a video rental store, and, in January 2005, presumed Chavistas came into the store asking why Petitioners only carried American films. In February 2005, the windows of the Petitioners' car were

3

broken while it was parked in the video store's parking lot.

In October 2006, Lobo was in a car accident after he turned in the proceeds of a raffle held to benefit Petitioners' political party and the parties' presidential candidate. Lobo got nervous because he thought he was being following by Chavistas, and he lost control of the vehicle and crashed. Later that month, Petitioners decided to leave the country.

After the hearing, the IJ denied Mora's application and ordered Petitioners removed to Venezuela. The BIA affirmed the IJ's decision. Before this Court, Petitioners do not dispute that they are removable as charged, but contend that the BIA erred in finding that Mora did not establish past persecution or a well-founded fear of future persecution.

## II. Discussion

When the BIA issues a decision, we review only that decision, except to the extent that the BIA expressly adopts the IJ's decision. *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001). When the BIA explicitly agrees with the findings of the IJ, we review the decisions of both the BIA and IJ as to those issues. *Ayala v. U.S. Att'y Gen.*, 605 F.3d 941, 948 (11th Cir. 2010). Here, because the BIA agreed with the IJ's findings regarding past persecution and well-founded fear of future persecution, we review both decisions.

4

In a petition for review of a BIA decision, we review factual determinations under the substantial evidence test. *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1350 (11th Cir. 2009). Under the substantial evidence test, we draw every reasonable inference from the evidence in favor of the decision, and reverse a finding of fact only if the record compels a reversal. *Id.* at 1351. We must affirm if the BIA's decision is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Id.* The fact that the record may support a contrary conclusion is insufficient to reverse. *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (*en banc*).

An applicant for asylum must meet the INA's definition of a refugee. INA § 208(b)(1), 8 U.S.C. § 1158(b)(1). The INA defines a refugee as a person who cannot return to his or her home country due to "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A). To establish eligibility for asylum, an applicant must demonstrate either past persecution, or a well-founded fear of future persecution, based on a statutorily listed factor. *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1257 (11th Cir. 2006). If the applicant demonstrates past persecution, there is a rebuttable presumption that she has a well-founded fear of future persecution. *Id.* If the applicant cannot demonstrate past persecution, she must demonstrate that her

well-founded fear of future persecution is subjectively genuine and objectively reasonable.  *Id.*

We have held that "persecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation, and that mere harassment does not amount to persecution."  *Sanchez Jimenez v. U.S. Att'y Gen.*, 492 F.3d 1223, 1232 (11th Cir. 2007).  In determining whether the petitioner has suffered persecution, we consider the cumulative effects of the incidents.  *De Santamaria v. U.S. Att'y Gen.*, 525 F.3d 999, 1008 (11th Cir. 2008).

We have previously concluded that circumstances involving only minimal violence do not compel a conclusion of persecution.  *See Kazemzadeh*, 577 F.3d at 1353 (upholding the BIA's determination of no past persecution where the petitioner was "arrested while participating in a student demonstration, interrogated and beaten for five hours, and detained for four days, but . . . did not prove that he suffered any physical harm," and state authorities monitored him after his release and ordered him to appear before a university disciplinary committee and a state court); *Djonda v. U.S. Att'y Gen.*, 514 F.3d 1168, 1174 (11th Cir. 2008) (upholding the BIA's determination of no past persecution where the petitioner was threatened with arrest by students who lacked the power to carry out that threat, "in conjunction with [a] minor beating" that merely resulted in "scratches and bruises").

On the other hand, we have held that repeated death threats accompanied by the attempted kidnapping of the petitioner's daughter and the attempted murder of the petitioner whose moving vehicle was shot at multiple times, but he was not struck by the bullets or physically injured, constituted persecution. *See Sanchez Jimenez*, 492 F.3d at 1233. We have also held that the petitioner suffered past persecution based on the totality of the verbal death threats, an attempted attack, and one attack by three gunmen who threw the petitioner to the ground, hit him with the butt of a rifle, and broke his nose that occurred over an 18-month period. *Mejia v. U.S. Att'y Gen.*, 498 F.3d 1253, 1257-58 (11th Cir. 2007). In addition to in-person threats or violence against the petitioner, we have held that threats against others can support a claim of past persecution where the threat "concomitantly threatens the petitioner." *De Santamaria*, 525 F.3d at 1009 & n.7 (finding past persecution where the applicant suffered "repeated death threats, two physical attacks [which resulted in minor physical injuries], the murder of a family friend, and a kidnapping cut short only by a harrowing escape").

Here, substantial evidence supports the BIA's determination that Mora failed to establish past persecution. Mora's testimony established that, over an approximately three-year period, her family's home was broken into and vandalized twice, she received an unspecified number of threatening and harassing phone calls, people suspected of being Chavistas drove past her home on

7

motorcycles at night, her car windows were broken, one son was assaulted, her other son was in a helicopter crash, and her husband was in a car accident. Even when viewed cumulatively, we cannot conclude that these incidents compel a finding that Mora suffered persecution.

Unlike *De Santamaria*, *Sanchez Jimenez*, and *Mejia*, this is not a case where the threats were accompanied by attacks or attempted attacks on Mora or her family members. While Mora asserts that the helicopter crash was an attempt on her son Frank's life based on his political activity, neither she nor Frank offer anything more than their own speculation that the crash was the result of sabotage or that Frank, who was in the company of high-ranking military officials, was specifically targeted for his anti-Chavez beliefs. Moreover, the official report on the helicopter crash concluded that it was an accident. Likewise, there is no evidence that Lobo's accident was an attempt on his life. Mora's own testimony reflects that Lobo got nervous because he believed he was being followed, lost control of his vehicle, and drove off the road into a telephone box, not that Chavistas intentionally forced him off the road. Thus, we are left with the threatening phone calls, the house and car being broken into, motorcycles driving past the home, and the assault of Petitioners' other son that resulted in nothing more than bruises. When compared to our precedent, these remaining incidents do not compel the finding that these incidents were anything more than isolated

8

incidents of verbal harassment or intimidation. *See Kazemzadeh*, 577 F.3d at 1353;

*Djonda*, 514 F.3d at 1174. Because Mora did not establish past persecution, there

is no presumption that she has a well-founded fear of future persecution. *See Ruiz*,

440 F.3d at 1257.[3] Therefore, the BIA did not err in denying Mora's asylum

application, and we deny the petition for review. [4]

     **PETITION DENIED.**

---

[3] To the extent that Petitioners' appellate brief is construed as raising an argument that she established a well-founded fear of future persecution based on a pattern or practice of persecution, we lack jurisdiction to review this argument because she is raising it for the first time on appeal. *See Amaya-Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1251 (11th Cir. 2006) (stating if a petitioner has failed to exhaust her administrative remedies, we lack jurisdiction to consider the claim).

[4] Petitioners' petition for review does not challenge the BIA's denial of Mora's claim for withholding of removal and CAT relief, and thus, these claims are deemed abandoned. *See Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1230 (11th Cir. 2006).