[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-10859
Non-Argument Calendar

_____

Agency No. A205-344-593

DAVID MORALES RODRIGUEZ,
a.k.a. David Morales,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(December 6, 2016)

Before ED CARNES, Chief Judge, JULIE CARNES, and JILL PRYOR, Circuit
Judges.

PER CURIAM:

David Morales Rodriguez applied for withholding of removal under 8

U.S.C. § 1231(b)(3)(A) and the United Nations Convention Against Torture,

contending that he was at risk of being tortured or killed at the hands of the Zetas, a drug cartel in his native country of Mexico. The Immigration Judge found that Morales had not shown that he faced or faces past or future persecution or torture, and the Bureau of Immigration Appeals dismissed his appeal. Morales now petitions for review of the BIA's decision.

I.

The Department of Homeland Security charged Morales as removable under 8 U.S.C. § 1182(a)(6)(A)(i). He conceded his removability but applied for withholding of removal based on membership in a particular group and sought CAT relief.[1] His application did not state what social group he was a member of, but it indicated that he would be targeted because the Zetas knew he had been making money by working in the United States.

At the hearing on his application Morales stated that he left Mexico because of threats from the Zetas, although his wife and five daughters remained behind. He also described three crimes committed by Zeta members against his family in the last decade. First, a drug addict and Zeta member named Umberto Solano broke into his house. Morales' neighbors called the police and Solano was arrested before he could harm Morales' family. Morales testified that he did not know how

---

[1] Because he had entered the United States more than one year before he filed his application, Morales conceded that he was not eligible for asylum under the Immigration and Nationality Act.

2

long Solano had been jailed on account of that incident.  Second, the Zetas kidnapped Morales' brother's niece, and the family had to pay a ransom.  The family did not contact the police in connection with the kidnapping because the Zetas had threatened them.  Third, Morales' son-in-law, also a member of the Zetas, accosted two of Morales' daughters (including the son-in-law's wife).  He "tussl[ed] with [their] books, pull[ed] their hair[ ], and twist[ed] [their] arm[s]."  The local prosecutor's office investigated the battery, interviewing both women.  According to Morales, the prosecutor recommended against pressing charges because the son-in-law might want revenge if he were put in jail.

The IJ denied withholding of removal based on membership in a particular social group and also denied CAT relief.  As an initial matter, he found Morales' testimony credible.  But he noted that Morales' family continued living in Mexico "unencumbered," and that the police had intervened when Solano broke into his home.  As a result, there was no indication in the record that "the Mexican government is unwilling or unable to provide assistance to the family."  The IJ also found that there was no evidence that Morales would be subjected to torture upon returning to Mexico, precluding CAT relief.

The BIA dismissed Morales' appeal, finding that a generally high level of criminal activity "does not constitute evidence of persecution based on a statutorily protected ground."  In addition, it agreed with the IJ that the police's reaction to the

crimes committed against Morales' family showed that the Mexican government was not "unwilling or unable to protect [Morales]." The BIA also found that Morales had failed to show that he was more likely than not to be tortured by or with the acquiescence of a Mexican public official, so he was ineligible for CAT relief.

## II.

Morales contends that the BIA erred by declining to withhold removal or grant him CAT relief. "When the BIA issues a decision, we review only that decision, except to the extent the BIA expressly adopts the IJ's decision." Lopez v. U.S. Att'y Gen., 504 F.3d 1341, 1344 (11th Cir. 2007). We review the BIA's factual findings for "substantial evidence." Kazemzadeh v. U.S. Att'y Gen., 577 F.3d 1341, 1350–51 (11th Cir. 2009). Under that "highly deferential" standard, we must affirm the decision "if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Id. at 1351. By contrast, we may only reverse the BIA's findings if "the record not only supports reversal, but compels it." Id.

Regarding his request for withholding of removal based on membership in a particular social group, Morales argues on appeal that he is a member of the social group of "victims of a crime whom the police/government fail[ ] to protect as it is their duty." But Morales did not raise that argument before the IJ. He did check

4

the box on his initial application that he was seeking withholding of removal based on membership in a particular social group, but he never expressly stated what group he was referring to.  Instead, he stated in his application and in his testimony that the Zetas would target him "to obtain any money I may have" from his years of working in the United States.  That has nothing to do with the "victims of crime" social group to which he now claims he belongs.  Because Morales failed to raise the "victims of crime" argument before the IJ, we lack jurisdiction to review it.  See Dormescar v. U.S. Att'y Gen., 690 F.3d 1258, 1269 n.11 (11th Cir. 2012); Amaya-Artunduaga v. U.S. Att'y Gen., 463 F.3d 1247, 1250–51 (11th Cir. 2006) (citing 8 U.S.C. § 1252(d)(1)).  We therefore dismiss that portion of Morales' petition for review.

As for his request for CAT relief, Morales argues that the Mexican government knew about the Zetas' threats and "refused to step in and give aid to [him]."  "In making out a claim under CAT, '[t]he burden of proof is on the applicant . . . to establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal.'"  Najjar v. Ashcroft, 257 F.3d 1262, 1303 (11th Cir. 2001) (quoting 8 C.F.R. § 208.16(c)(2)).  For an act to rise to the level of torture, it must involve the infliction of "severe pain or suffering."  8 C.F.R. § 208.18(a)(1).  Furthermore, an applicant is not eligible for CAT relief unless he faces torture "with the consent or acquiescence of a public

5

official or other person acting in an official capacity." Id. "Acquiescence," in turn, "requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity." Id. § 208.18(a)(7).

Morales asserts that he reported the Zetas' criminal acts against his family and the Mexican government did nothing, so the government has "acquiesced" to acts of torture and would do so again were he to return to Mexico. According to Morales' testimony, he alerted Mexican authorities to two crimes against his family: Solano's break-in and Morales' son-in-law's battery of two of his daughters. Neither incident falls within the CAT's definition of torture. First, Solano was arrested and incarcerated after breaking into Morales' house; there is no evidence of "torture" or "acquiescence." Second, Morales' son-in-law's "tussling" with Morales' daughters does not rise to the level of "severe pain or suffering" that the CAT requires, and the fact that the family accepted the prosecutor's recommendation not to press charges does not show the government's acquiescence to acts of torture.

Morales points to nothing in the record beyond those past incidents of supposed "torture" that shows that he is more likely than not to face actual torture with the acquiescence of a public official upon his return to Mexico. Accordingly,

6

substantial evidence supports the BIA's conclusion that he is not eligible for CAT relief.

**PETITION DISMISSED IN PART AND DENIED IN PART.**